JERRY B. CLARKSON, Respondent, *vs.* WILLIAM BUCHANAN, Appellant.

1. *Swamp lands—Patent—Act Sept. 28th, 1850—Effect of—Secretary of the Interior —Parol evidence identifying land.*—The Act of Congress of September 28th 1850, to enable the State of Arkansas and other States to reclaim the swamp lands within their limits (9 U. S. Stat., 519,) constituted a present grant, vesting an absolute title *proprio vigore* in the State of Missouri to such lands within her limits without issue of patent. The failure of the Secretary of the Interior to afterward perform his duty, in making out the lists and plats of the lands, and transmitting them to the governor, did not in any wise interfere with, or impair, the title. And in ejectment for such land, parol evidence is admissible for the purpose of identifying the same, as, in fact, swamp and overflowed land.

2. *Swamp lands—List of, in office of Register of lands—Effect of, as evidence.*— A list of the swamp lands, certified from the office of the Register of lands, is presumptive evidence that the list is a legal and correct one.

*Appeal from Macon Circuit Court.*

*James Carr*, for Appellant.

I. The act of September 28th, 1850, (9 U. S. Stat., 519,) did not pass the title in fee to said States, *proprio vigore* and unconditionally, for want of words of present grant. The words in the first section are "*shall be*," and same are hereby, granted to said State. The words "shall be" import futurity within themselves. But when construed in connection with the following words in the second section of said act, there can be no doubt about it, viz: "It shall be the duty of the Secretary of the Interior, as soon as may be practicable after the passage of this act, to make out an accurate list and plats of the lands described as aforesaid, and transmit the same to the Governor of the State of Arkansas, and, at the request of said Governor, cause a patent to be issued to the State therefor; and on that patent, the fee simple to said lands shall vest in the said State of Arkansas, subject to the disposal of the legislature thereof."

II. The overture is complete on the part of the United States, when this "duty" shall have been performed. But the title is not thereby divested out of the United States. It is then left to the Governor of the State, as its legal head and representative, to determine whether he will, on behalf

of the State, accept the lands embraced in said "list and plats." Unless he accepts there is no agreement, and no contract is made.

III. There is no evidence in the record; that the land in controversy was ever selected by any agent of Macon county, as swamp or overflowed land; that it was ever reported to the Commissioner of the General Land Office; or, that "an accurate list and plats" of said land was ever made out by the Secretary of the Interior, and the same transmitted to the Governor of the State; or that, "at the request of said Governor," "a patent" had been "issued to the State therefor."

IV. The United States could not compel the States to accept said lands; and without acceptance the grant is necessarily void. (Ellis vs. Marshall, 2 Mass., 277; 1 Kyd. on Corp., 65, 66; Ang. and A. on Corp., § 82; Dartmouth College vs. Woodward, 4 Wheat., 518.)

So thoroughly has the Federal Government acted upon the assumption, that a grant of lands to a State is a contract not binding upon such State until accepted, that it has always required the State to accept such grant in some positive unequivocal manner. See the Act of April 30th, 1802, providing for the admission of Ohio into the Union, (§ 7, Chap. 40, 2 vol. U. S. Stat., 175), the Act of April 19th, 1816, providing for the admission of Indiana into the Union, (§ 6, Chap. 57, 3 vol. *Id.* 290 ), the Act of April 18th, 1818, providing for the admission of Illinois into the Union, (§ 6, Chap. 673, *Id.* 430 ), and the ordinance of July 13th, 1787, (1 vol. *Id.* 51).

V. Admitting for the sake of argument, that the State did accept the donation of the swamp and overflowed lands, as required by the act of September 28th, 1850, before the definite location of the line or route of the Hannibal and St. Joseph Railroad, still such acceptance would only entitle her to such lands as come within the purview of the said act. Her claim would be in the nature of "a float" (Menard's heirs vs. Massey, 8 How., 309), until the Secretary of the Interior had made out "an accurate list and plats of said lands." Then

the State would have had a *jus ad rem* to the lands embraced in said "list and plats." This inchoate title might then have become a *jus in re* by issuing a patent therefor. But prior to the Secretary of the Interior making out such "list and plats," no person knew what lands were swamp and overflowed within the purview of the law. At common law, the grant would be void for uncertainty. (Buyck vs. United States, 15 Pet., 223; United States vs. Forbes, *Id.*, 173; 4 Bacon Ab. Tit. Grant, 81; United States vs. Miranda, 16 Pet., 160.)

*William H. Sears & Albert F. Foster*, for Respondent.

I. The plaintiff founded his title to the land in question on the Act of Congress approved September 28th, 1850, entitled "an Act to enable the State of Arkansas and other States to reclaim the swamp land within their limits." And that act was by its terms a present absolute grant to the several States of all the swamp land lying therein, belonging to the United States at the time of the grant. (9 Stat. at Large, 519, § 1; Han. & St. Jo. R. R. Co. vs. Smith, 9 Wal., 95.)

II. It was a grant in the form of law, describing the subject of the grant by its quality instead of by its quantity, or metes and bounds, which is a sufficiently specific and certain description to make the grant operative as a present absolute grant. (3 Washb. Real Prop., 354, (3rd Ed.); 1 Greenl. Ev., § 287; Worthington vs. Hylyer, 4 Mass., 204; Melvin vs. Proprietors, &c., 5 Metc., 28; Morse vs. Marshall, 11 Allen, 230; Lessee of Barton vs. Heirs of Morris, 15 Ohio, 408; Lodge's Lessee vs. Lee, 6 Cranch., U. S., 237.)

III. Wherever in a grant of land the description is such, that the land intended to be conveyed can be ascertained by it, it is then sufficiently specific and certain to give effect to the grant. (See cases cited in § 2, *supra*; also, 3 Washb. Real Prop., 344; Peck vs. Mallams, 10 N. Y., 532; Jackson vs. Marsh, 6 Cow., 281; Comm. vs. City of Roxbury, 9 Gray, 451.)

IV. The grant should therefore be treated as a present absolute grant, even though the act does provide for the issuing

of a patent by the Secretary of the Interior; for, where land is granted by Congress, or a State legislature, and the same act authorizes the issuing of a patent, a patent is not necessary to show a good title. (Fenwick vs. Gill, 38 Mo., 510; Wilcox vs. Jackson, 13 Pet., 516.)

V. And parol evidence was properly admitted for the purpose of preventing the grant of Congress from becoming inoperative for uncertainty, to bring it within the grant, and to identify the land granted. (3 Washb. Real Prop., 347, 349, 363; 1 Greenl. Ev., §§ 286, 287 and note; Gerrish vs. Towne, 3 Gray, 82; Woods vs. Lawin, 4 Gray, 322; Stone vs. Clark, 1 Metc., 381; Craft vs. Hibbard, 4 Metc., 452; Waterman vs. Johnson, 13 Pick., 261; Frost vs. Spaulding, 19 Pick., 445; Clark vs. Munyan, 22 Pick., 410; Pettit vs. Shepard, 32 N. Y., 97; Lessee of Barton vs. Heirs of Morris, 15 Ohio, 408; Hildebrand vs. Fogle, 20 Ohio, 147; Han. & St. Jo. R. R. Co. vs. Smith, 9 Wall., 95.)

VI. The second section of the act of Congress in question, so far as it relates to the selecting of the swamp land, making out list and plats of the same, and issuing patents therefor, is merely directory; and it is not intended to, in any manner, limit nor restrict the words of present, absolute grant, expressed in the first section. (Sedg. on Stat. and Const. Law, 368, and cases there cited; 9 U. S. Stat., 519, § 2.)

VII. The land in question, being in fact swamp land in 1850, having been selected, placed in the list of swamp land lying in Macon county, and having been transmitted to the Governor as such, and being included in the list of swamp land on file in the office of the Register of lands, the State was entitled to a patent for the same. Hence the failure to obtain such patent can amount to nothing more than a technical defect in the plaintiff's title, of which the defendant in this case cannot take advantage. (Tyler on Eject. and Adv. Enjoy., 74; McAlistor vs. Williams, 1 Turn., 334; Zeringue vs. Williams, 15 La. An., 76.)

VIII. The plaintiff produced in evidence a certified copy of the list of swamp land on file in the office of the Register

of Lands, which list embraces the land in question. The statute of this State makes such lists, or certified copies thereof, *prima facie* evidence of title in Macon county, and the plaintiff, being the grantor of Macon county, made out a *prima facie* case. (W. S., 868, § 9.)

WAGNER, Judge, delivered the opinion of the court.

This was an action of ejectment to recover the possession of a tract of land in Macon county containing forty acres.

The petition was in the usual form, and the answer was a simple denial, raising the general issues. The plaintiff to show title in himself, read in evidence :

First—An act of Congress, approved September 28th, 1850, entitled " An act to enable the State of Arkansas, and other States, to reclaim the swamp lands within their limits."

Second—The act of the General Assembly of the State of Missouri, entitled " An act donating certain swamp and overflowed land to the counties in which they lie;" approved March 3d, 1851.

Third—A deed to the land in question from Macon county, executed by the Swamp Land Commissioner of that county.

Fourth—A certified copy of the list of swamp land selected in Macon county, on file in the office of the Register of Lands, which list embraced the land in controversy.

The plaintiff, further to maintain his title, proved by the testimony of witnesses, that they knew the land in 1850 ; that it was swamp land subject to overflow and was unfit for cultivation. This last evidence was objected to by the defendant, but the objection was overruled.

The defendant held possession by purchase from the Hannibal & St. Joseph Railroad Company, and, to show that plaintiff had no legal title, he offered in evidence; an act of Congress, approved June 10th, 1852, entitled " An act granting the right of way to the State of Missouri and a portion of the public lands to aid in the construction of certain railroads in said State ;" an act of the General Assembly of the State of Missouri, approved September 20th, 1852, entitled " An

act to accept a grant of land made to the State of Missouri by the Congress of the United States, to aid in the construction of certain railroads in this State, and to apply a portion thereof to the Hannibal & St. Joseph Railroad;" a copy of the resolutions of the Board of Directors of the Hannibal & St. Joseph Railroad Company, adopted March 7th, 1853, accepting the grant of land made to the State of Missouri by the Congress of the United States; an exemplified copy of the map of the definite location and route of the Hannibal & St. Joseph Railroad, from the City of Hannibal to the City of St. Joseph, Missouri, with a line on the same denoting the line of said road, and with lines and figures designating the sections, townships and ranges; also evidence showing, that the Hannibal & St. Joseph Railroad was completed in February, 1859, and that the land in question was within six miles of the road.

A list of lands was produced and given in evidence, which were approved to the Hannibal & St. Joseph Railroad Company by the Commissioner of the General Land Office, which list embraced the land in question, and also a list of said lands filed for record in the Recorder's office of Macon county.

The above constituted the evidence in the cause, and upon which the court declared the law to be, that if the land in controversy was swamp and overflowed land on the 28th of September, 1850, and unfit for cultivation, and the same was selected by Macon county as swamp and overflowed land, and was embraced in the list of swamp land in said county transmitted to the Governor of the State of Missouri, and by him filed in the office of the Register of Lands, under the act of Congress of September 28th, 1850, then the title, on the transmission of said lists and plats by the Secretary of the Interior to the Governor of the State, and by an act of the General Assembly of March 3d, 1851, vested in Macon county.

The court refused all the instructions offered by the defendant.

The first one was predicated on the ground, and asserted

the proposition, that no title accrued to the State for swamp or overflowed land till a patent was issued therefor.

The others declared, that the title to the land vested in the Hannibal & St. Joseph Railroad Company, provided the company had complied with certain conditions embraced within the acts above alluded to.

There was a verdict and judgment for plaintiff.

The several acts of Congress, together with the acts of the State Legislature, touching the subject matter of this suit, are set out in the statement of the case in Hannibal & St. Joseph Railroad Co. vs. Smith (41 Mo., 310), and need not be here copied in this opinion.

It is obvious, that the main question, which underlies this whole controversy and which must decide it, is, whether under the act of September 28th, 1850, a patent was necessary and requisite to the vesting of a title to the swamp and overflowed lands in the State.

If the act was a direct grant, and vested the title by its own terms, then the subsequent act of June 10th, 1852, donating lands for railroad purposes, did not include or operate on the lands previously granted.

In the Hannibal & St. Joseph Railroad Co. vs. Smith, *ubi supra,* where a cognate question was presented, it was held, that the act of Congress of September 28th, 1850, to enable the State of Arkansas and other States to reclaim the swamp land within their limits, operated as a reservation upon the grant of land made to the State of Missouri for the construction of the railroads described in the act of Congress of June 10th, 1852, and, that in a suit of ejectment brought by the railroad corporation claiming title under said act, parol evidence was admissible to prove, that the land sued for was swamp and overflowed land, made thereby unfit for cultivation so as to bring such land within the terms of the grant or reservation made by the act of September 28th, 1850, although the lists and plats to be made by the Secretary of the Interior, provided for in the act, had not been made and transmitted to the Governor, and no patents had issued.

The case referred to was appealed to the Supreme Court of the United States, where the judgment of this court was affirmed. (See Hannibal & St. Joseph R. R. Co. vs. Smith, 9 Wall., 95.)

It was declared in the United States Supreme Court, that the act concerning swamp and overflowed lands confirmed a present vested right to such lands, though the subsequent identification of them was a duty imposed upon the Secretary of the Interior, and that these lands were excepted from the subsequent railroad grants.

Mr. Justice Miller, who wrote the opinion of the court, says: "The first section of the act, after declaring the inducements to its passage, says, that the whole of these swamp and overflowed lands, made thereby unfit for cultivation, and unsold, are hereby granted to the States. * * * *

By the second section of the act of 1850, it was made the duty of the Secretary of the Interior to ascertain this fact, and furnish the State with the evidence of it. Must the State lose the land, though clearly swamp land, because that officer has neglected to do this? The right of the State did not depend on his action, but on the act of Congress, and though the States might be embarrassed in the assertion of this right by the delay or failure of the Secretary to ascertain and make out lists of these lands, the right of the States to them could not be defeated by that delay. As that officer had no satisfactory evidence under his control to enable him to make out these lists, as is abundantly shown by the correspondence of the land department with the State officers, he must, if he had attempted it, rely, as he did in many cases, on witnesses whose personal knowledge enabled them to report as to the character of the tracts claimed to be swamp and overflowed. Why should not the same kind of testimony, subjected to cross examination, be competent, when the issue is made in a court of justice, to show that they are swamp and overflowed, and so excluded from the grant under which plaintiff claims; a grant which was also a gratuity?

The matter to be shown is one of observation and examin-

ation, and whether arising before the Secretary, whose duty it was primarily to decide it, or before the court, whose duty it became because the Secretary had failed to do it, this was clearly the best evidence to be had, and was sufficient for the purpose. Any other rule results in this, that because the Secretary of the Interior has failed to discharge his duty in certifying these lands to the States, they, therefore, pass under a grant from which they are excepted beyond a doubt; and this, when it can be proved by testimony capable of producing the fullest conviction, that they were of the class excluded from plaintiff's grant."

The above case is conclusive authority, that the swamp land act constituted a present grant, vesting an absolute title in the States that were entitled to them; that the failure of the Secretary of the Interior to afterwards perform his duty did not in anywise interfere with or impair the title, and that parol evidence was admissible for the purpose of identifying the subject matter of the grant. But the defendant further insists, and his third instruction was asked on that point, that as the action is ejectment and plaintiff must recover on the strength of his own title, he must show, that in accordance with the law the Secretary of the Interior had made out an accurate list and plat of the swamp lands, including the land in controversy. The plaintiff produced in evidence a list of the swamp lands in Macon county, certified from the office of the Register of Lands, embracing this tract, and that was *prima facie* evidence. The presumption is, that the list was legally and correctly there. The same evidence was acted upon in the case of Railroad Co. vs. Fremont county (9 Wall, 89), and was adjudged sufficient. There the county was the actor, and the only evidence of title to the swamp lands in the county was the lists filed in the land office, and this was held sufficient to enable the county to maintain its suit. I see no distinction in this respect between the two cases.

I am of the opinion that the judgment should be affirmed; all the Judges concur, except Judge Adams who is absent.