KATE MARTIN et al. v. KITCHEN et al., Appellants.

Division One, March 30, 1906.

1. **EJECTMENT:** Equitable Title. The general rule of law is (subject to exceptions not in this case) that plaintiff may not recover in a strictly legal action like ejectment on an equitable title, although a defendant in ejectment may, by virtue of our Code of Pleading, plead an equitable defense and thereby defeat an outstanding naked legal title.

2. ———: Deed: Sufficiency of Description: "North of Castor River." A deed of trust, and the trustee's deed at foreclosure sale, through which plaintiffs claim and sue for in ejectment the northwest quarter of the northwest quarter of section 7, township 27, range 10 east, in Stoddard county, alleged to contain 53 acres more or less, described the land as the "northwest quarter of section seven north of Castor River," naming the State and county, but omitting all reference to township and range. It was shown at the trial that there were several sections seven in Stoddard county north of Castor river; the

particular tract in suit was not known in the community by the description "north of Castor river;" and while the description running through the deeds prior to the deed of trust partly designated the land as "north of Castor river;" yet it was not so used as to be a name of designation, as an earmark identifying it. *Held*, that, keeping in view the rule (1) that land may be conveyed by any description sufficient to identify it and (2) that parol proof is admissible to identify the subject of the grant, the deed of trust and trustee's deed were void because of patent ambiguity in the description, and were of no effect as a basis for a strict legal title.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED AND REMANDED (*with directions*).

*Kitchen & Woody* and *Mozley & Wammack* for appellants.

(1) The deed of trust, and the trustee's deed based thereon, offered by plaintiffs, should have been excluded by the court for the reason that they describe no property that could be located or identified from an inspection of the instruments. While there seems to no technical rule in regard to description of lands in a conveyance, yet it is always held that the description must be contained in the instrument or its references with such certainty that the land can be located and ascertained from it. Brown v. Walker, 11 Mo. App. 226, 85 Mo. 262; Blow v. Vaughn, 105 N. C. 198; 1 Ballard's Annual on Law of Real Estate, 165. The test in the case at bar is, could a competent surveyor have taken the description contained in the deed of trust and from it have located the property with certainty? We contend that he could not for the reason that the proof shows there are several sections in Stoddard county that answer to the same general description, "north of Castor river," and he could not tell from the instrument which section was designated in the deed. The trust deed, and the trustee's deed, are absolutely void

and inoperative as conveyances because of the omission of the township and range from the description of the lands attempted to be described in said instruments. "The courts never permit parol evidence to be given, first to describe the land, and then apply the description." Mudd v. Dillon, 166 Mo. 120; Haughton v. Sartor, 71 Miss. 357; 3 Ballard's Law Annual, 247. (2) The defects in the deed under consideration are patent, and resort canot be had to parol or otherwise extrinsic evidence to identify and make certain the land conveyed. Mudd v. Dillon, supra; Haughton v. Sartor, supra; Campbell v. Johnson, 44 Mo. 247; Jennings v. Brizeadine, 44 Mo. 332; King v. Fink, 51 Mo. 209. (3) Defendants purchased the land without notice of plaintiffs' claim of title, and in the absence of actual knowledge on the part of defendants of plaintiff's claim, the trust deed and trustee's deed did not constitute notice to subsequent purchasers from the common source. Carter v. Holman, 60 Mo. 498; Land & Lumber Co. v. Franks, 156 Mo. 673.

*Wilson Cramer* for respondents.

(1) The deed of trust and trustee's deed, being regular in form and duly acknowledged and certified according to law, were entitled to record and were recorded on the land records of Stoddard county promptly after their respective dates. 1 Wagner's Statutes 1872, p. 277, sec. 24. (2) The defendants claim through a quitclaim deed executed by William R. Kitchen, made nearly ten years after the recording of the trustee's deed. (3) Aside from the other recitals in the deed of trust and trustee's deed hereinafter adverted to, which render the description certain, these conveyances are not void because of the omission of the township and range, but are good between the parties. Gatewood v. House, 65 Mo. 633; Bollinger v. McDowell, 99 Mo. 632; Fordyce v. Rapp, 131 Mo. 354. (4) If good between the parties they

must be valid as against subsequent purchasers with notice from the same grantor. (5) Deeds are to be so construed as to carry out, if possible, the intention of the parties. Preswell v. Headley, 141 Mo. 187; Briant v. Garrison, 150 Mo. 655; Walton v. Briant, 152 Mo. 489. (6) The description in a deed is to be construed most favorably to the grantee. 3 Washb. Real. Prop. (3 Ed.), p. 343; Bray v. Conrad, 101 Mo. 331; Cole v. Mueller, 187 Mo. 638. (7) The intention of William R. Kitchen in executing the deed of trust was to secure the payment of a debt due to Edward Martin & Co., and to convey for that purpose lands lying in sections 6 and 7 in township 27, range 10. He owned no other land in Stoddard county. By mistake of the scrivener, evidently the township and range were omitted, and the land was described as follows: "The south half of lot one of the southwest quarter of section six and northwest quarter of section seven, north of Castor river." The plat-book of original entry shows that Castor river runs east and west through the northwest quarter of section 7, township 27, range 10. There is no other section 7 in Stoddard county, the northwest quarter of which is touched by Castor river. The evident purpose was to convey that part of the northwest quarter of section 7 lying north of Castor river and adjacent to it. This is made clear by reference to the several deeds through which William R. Kitchen acquired title, all of which were of record and were introduced by plaintiff. (8) That the words "north of Castor river" were descriptive words, used to designate land lying adjacent to the river, and were so understood, is further shown by the fact that the same words are used in the deeds made nearly ten years after the trustee's sale. (9) There being no other northwest quarter of section 7 in Stoddard county through which Castor river runs, and the plain, evident meaning of the words "north of Castor river" being that the land conveyed was on the north side and adjacent to Castor river, the description,

the deed of trust and the trustee's deed identify the land as being in section 7, township 27, range 10. (10) The several conveyances to which William R. Kitchen acquired title, as well as the deed of trust executed by him, were in defendants' chain of title, and they are bound by every recital therein. Webb on Record of Title, sec. 178; Tydings v. Pitcher, 82 Mo. 379; Mason v. Black, 87 Mo. 329; Knox Co. v. Brown, 103 Mo. 223; McDonald v. Quick, 139 Mo. 484. (11) The circumstances shown by the evidence justify the conclusion that defendants had actual knowledge of the prior conveyance made by William R. Kitchen, and under whom he claimed. He and his immediate grantors were cousins of William R. Kitchen, and this is a fact which may be considered in connection with the question of notice. Webb on Record of Title, sec. 224; Morrison v. Juden, 145 Mo. 282.

LAMM, J.—This is a suit in ejectment brought by the widow and heirs at law of Edward Martin, deceased, to recover from George S. Kitchen and his wife the possession of the northwest quarter of the northwest quarter of section 7, township 27, range 10 east, in Stoddard county, alleged to contain 53 acres, more or less. Why the wife of Kitchen was made a party defendant does not appear.

The answer disclaims any interest in or title to 3.75 acres off the northeast corner of said tract; avers that said 3.75 acres were sold for taxes for the years 1872 to 1876 inclusive under an execution issued on a judgment for taxes against William R. Kitchen, covering the whole northwest quarter of the northwest quarter, which was levied on as his land, and said 3.75 acres were purchased by Edward Martin & Co. at said sale in September, 1882; that Edward Martin was the ancestor of plaintiffs and by such purchase at execution sale he admitted the title to the *locus* at the date of the pur-

195 Sup.—31

chase, was in W. R. Kitchen, from whom both plaintiffs and defendants claim title, and that by said purchase plaintiffs are estopped from denying that W. R. Kitchen was the owner of and held title to the land at that date. The answer also tendered the general issue.

The replication denied all new matter pleaded in the answer.

The cause was tried before the court without a jury. A judgment was rendered for plaintiffs for possession (damages, rents and profits were not adjudged), and defendants perfected their appeal in conventional form.

The story of the case is as follows:    .

W. R. Kitchen is the common source of title, and on November 12, 1873, he executed a deed of trust to Daly, trustee, for the benefit of Edward Martin & Co. of St. Louis, securing two notes for $257 each, due respectively in six and twelve months, on two several tracts of land in Stoddard county, one of them being described as the "northwest quarter of section seven, north of Castor river," omitting all reference to township or range. This deed of trust was in usual form, was duly placed of record and was foreclosed, because of default, by the sheriff of Stoddard county, as acting trustee, on the 15th day of August, 1877, who straightway executed a trustee's deed to the purchaser, Edward Martin, on his bid of $300 in the aggregate for both tracts covered by the deed of trust, who presently recorded the same. In the trustee's deed the land is also described as the "northwest quarter of section seven, north of Castor river," and while the state and county are mentioned, no township or range is given.

Plaintiffs seek to deraign title through these two deeds, and the principal controversy hinges on the omission of the township and range from the description made by the conveyancer. When the trust deed was offered in evidence and the trustee's deed, following that, defendants objected for the reason, among

others, that said deed described no property. This objection was overruled, the deeds were admitted and defendants excepted to the ruling.

Defendants seek to deraign title through a series of deeds commencing with one from the said W. R. Kitchen and his wife to George W. Kitchen of date of March 4, 1887, recorded September 5, 1887, describing the land as the "north fractional half of the northwest quarter, north of Castor river, in section 7, . . . in township 27 north, of range 10 east;" followed by one from G. W. Kitchen and wife to William G. Kitchen of date of September 18, 1893, recorded December 9, 1893, similarly describing the land; followed by one from W. G. Kitchen to W. J. Kitchen, dated November 3, 1893, recorded November 6, 1893—the former deeds were quitclaims—this was a warranty deed and described the land in controversy, omitting in terms, however, the 3.75 acres in the northeast corner to which defendants disclaim title and in which they disclaim any interest. This deed refers to the tract, as thus diminished, as containing 49.67 acres. Defendants then produced in evidence a warranty deed from W. J. Kitchen to defendant George S. Kitchen dated February 20, 1894, recorded April 2, 1894, consideration $270, and describing the land as in the last conveyance.

Supplementing their record evidence aforesaid, plaintiffs introduced a patent from the Government to Martin Wilfong, patentee, and mesne conveyances from said patentee down to the common source of title, W. R. Kitchen. In one of these deeds the land is described as "all the part north of Castor river in the northwest quarter of section 7, township 27, north, of range 10 east." In another of these mesne conveyances, the same description is used. In one other of these mesne conveyances, the following description is used: "and the northwest quarter of section 7, north of Castor river." In others of these mesne conveyances, Castor river is not referred to. The object of

introducing that part of the chain of title preceding the admitted common source of title, was to show the theory of plaintiffs, to-wit, that the phrase "north of Castor river" was an earmark in the description of the land and tended to identify the tract and cure the omission of the township and range, of all of which, they say, defendant must take notice from the record.

Plaintiffs also introduced the platbook of original entries of Stoddard county, so far as it related to section 7, township 27, range 10. This platbook showed a watercourse meandering through section 7, as indicated by the following crude, free hand diagram in which "A" represents the northwest quarter of the northwest quarter, entered by Martin Wilfong, "BCD" represent the meander of Castor river, and "C" represents the center of section 7:

Sec. 7, Twp. 27, R. 10 E.

Plaintiffs supplemented their record evidence by oral evidence tending to show that Edward Martin was dead and that plaintiffs were his heirs at law, and other oral evidence tending to show that defendant George S. Kitchen was in possession, that the reasonable rental value of the cultivated part was three dollars per acre, and that between thirty and forty acres were in cultivation. To all this evidence defendants objected, "because the deeds from which they claim title are so vague and indefinite as not to transfer any title and are not subject to explanation by parol testimony." Defendants' objection being overruled, they saved an exception. The platbook introduced did not indicate the watercourse shown thereon as bearing the name of Castor river, and plaintiffs introduced oral evidence, over the objections of defendants, tending to show that the name of that watercourse was Castor river.

No possession was taken by plaintiffs' ancestor under his claim of title, nor were plaintiffs or either of them ever in possession of the premises.

On their part defendants introduced oral testimony showing that George S. Kitchen was living on the land with his family as a home; that it was wholly out-lying in the woods and unfenced when he bought it; that he had cleared all that was cleared, to-wit, about forty acres, had built three dwelling-houses thereon, one a pretty good house at the cost of $500, the others not so good; that he made his first improvements in the year 1895 or 1896, when he went into possession; that he paid five dollars an acre for it as it lay in a state of nature in the wilderness; that, besides the dwelling-house, he had built a barn costing about $130, had put up other improvements and put out a small apple orchard; that, at the time he bought the land by warranty deed, he knew nothing about the deed of trust given Edward Martin & Co. by William R. Kitchen and thought he bought a genuine title; and that he had paid the taxes from the year 1895 down to the time of the

suit and claimed to own the land. By W. J. Kitchen, grantor of George S. Kitchen, and who also held by warranty deed, it was shown that he knew nothing about any misdescription of land in any of the deeds. It was also shown that all the Kitchens, appearing as grantor and grantees in the numerous deeds, were either own cousins or second cousins.

Defendants also introduced the whole platbook of Stoddard county, showing, *inter alia,* that Castor river enters the county at the northwest corner of section 31, township 28, range 10; and runs thence almost due south to the north boundary of township 27; thence in a general southwest direction to the center of section 2, township 27, range 9; thence east and southeasterly to section 17, township 26, range 12; and thence south, bearing east, to the south boundary line of the county in section 14, township 23, range 12. By this plat it was also shown that Castor river bisects section 7, township 26, range 12, so that, the northwest quarter thereof is north of that river. It also shows that section 7, township 27, range 11; section 7, township 28 of the same range; section 7, township 27, range 12, and the northwest quarter of fractional section 7, township 28, range 12, in Stoddard county, are each and all north of Castor river.

Defendants were allowed to introduce the sheriff's deed to Edward Martin & Co. conveying the 3.75 acres in the northeast corner of the *locus,* referred to in the answer. But, as will presently appear, the terms of this deed are immaterial and, hence, need not be set forth further than to say that they were as pleaded in the answer—it seems that the whole northwest quarter of the northwest quarter was subject to the taxes in judgment, that the judgment was against W. R. Kitchen alone and that only 3.75 acres in the northeast corner were sold to realize the judgment and costs, and purchased at that sale, not by the ancestor of plaintiffs, but

by a firm known as Edward Martin & Co., the individual members of which are not shown.

Defendants prayed and were refused instructions, declaring as a matter of law that the trust deed from William R. Kitchen and wife to Daly, trustee for Edward Martin & Co., and the trustee's deed executed on foreclosure thereof, were void and inoperative as grants and insufficient to convey the legal title. To the refusal of these instructions, defendants excepted.

Upon the foregoing facts, was the judgment below right and should it be allowed to stand? We think not, and for the following reasons:

(1) Plaintiffs must recover, if at all, on a close application of the law and on their strict legal title, if any, because the title being tried out is a legal and not an equitable one, so far as plaintiffs are concerned in this case. What relief plaintiffs' ancestor might have been entitled to had he gone into equity betimes and sought to reform the trust deed executed for the benefit of Edward Martin & Co. and the trustee's deed following that to him, we need not inquire. Nor should we consider whether or not plaintiffs, as widow and heirs at law of Edward Martin, might have reformed these deeds and established their title in equity, on proof of a mistake in the scrivener and by bringing home notice to subsequent claimants. The general rule of law is, subject to exceptions not in this case, that plaintiff may not recover in a strictly legal action like ejectment on an equitable title (Ables v. Webb, 186 Mo. l. c. 247), although a defendant in ejectment, by virtue of our code of pleading, may plead an equitable defense (R. S. 1899, sec. 605), and thereby defeat an outstanding naked legal title (Shaffer v. Detie, 191 Mo. 377); so that, if the boot were on the other foot, and if respondents were in possession under claim of an equitable title, and if appellants were suing for possession in an ejectment and were confronted by an answer setting up an equitable title, accompanied by

possession and improvements, an entirely different case would be presented.

(2)   It stands conceded by counsel that the Statute of Limitations is no defense.   This concession, we presume, is based on the theory that there had not been actual, visible, continuous and adverse possession in defendants, and those under whom they held, for more than ten years prior to the bringing of this suit.   It results from this concession that we need not consider the fact of possession, as such, nor the fact that the land has been vastly improved by defendants by building habitations, outbuildings, clearing away the forest and fencing.   If the decision were adverse to defendants, their remedy on that score must be sought as provided by the statute before a writ of ouster is enforced. [R. S. 1899, sec. 3072, *et seq.*]

(3)   Appellants' plea of estoppel must be treated as by-matter, because it is not shown that Edward Martin was the purchaser at the execution sale for taxes. It is not shown that he procured the judgment to be rendered against W. R. Kitchen, or the land to be levied on as his.   Nor is it shown that defendants or their grantors were misled by that sale or in anywise changed their position.   If defendants or their grantors had purchased at that sale, and if Edward Martin had been the procuring cause of that judgment, execution levy and sale, a different question might arise.   We cannot see what that tax suit, judgment, execution levy, sale and sheriff's deed have to do, in the slightest degree, with this case.   They are wholly *res inter alios acta* and no element of estoppel is presented to us.

(4)   The very pith of the case lies in the question whether the trust deed for the benefit of Edward Martin & Co., and the trustee's deed to respondents' ancestor, conveyed the legal title.   The learned trial judge held they did, when supplemented by the oral proof and the other documentary evidence.   He, therefore, permitted these deeds to be introduced in evidence and

refused appellants' instructions declaring them void and inoperative as grants, and in both of these rulings, in our opinion, he erred. Because: the description partly running through the deeds prior to the title vesting in its common source, W. R. Kitchen, locating the land "north of Castor river," cannot be held to be so inseparably connected with the land itself, as a name or designation, as to be a part of the description— an earmark identifying the tract conveyed. It may be admitted, land may be conveyed by any description sufficient to identify it. It may be admitted, further, that parol proof is admissible to identify the subject of a grant. [Marvin v. Elliott, 99 Mo. 616.] And that if ambiguity in a grant be created by extrinsic evidence, it may be dissipated in the same way. But all these principles do not assist respondents in this case. Their evidence falls short of showing that the *locus* was known in the community by the description, "north of Castor river." That description might as well suit *any* land north of Castor river in any section seven in Stoddard county. In this case there are shown to be several sections seven in Stoddard county north of Castor river. And, bringing the matter closer home, there was at least one other section seven in a different township and range in that county through which Castor river actually flowed and which had a northwest quarter north of and adjacent to the said river.

In this condition of things, with no township or range mentioned in the deeds, we have presented to us a plain and typical case, not of a latent ambiguity which might or might not be dissipated by parol proof identifying the subject of the grant, but of a patent ambiguity making the deeds absolutely void and as of no effect as the basis of a strict legal title. It will not be necessary to go into a consideration of the case law to any extent; for the case at bar is on all-fours, in this respect, with Mudd v. Dillon, 166 Mo. l. c. 120

(*q. v.* with cases there cited). See, also, other cases in point, cited in appellants' brief.

This branch of the case may be disposed of with the suggestion that the supplementary parol proof and the documentary proof, other than the two deeds, tended to intensify and deepen the ambiguity, rather than to dissipate it. But in this case such proof was not admissible. "Courts never permit parol evidence to be given, first to describe the land sold, and then to apply the description." [Ferguson v. Staver, 33 Pa. St. 411.] In Bowers v. Andrews, 52 Miss. 1. c. 606, referring to conveyances, it was said: "But none will deny that when the mere perusal of the instrument shows plainly that something more must be added before the reader can determine which of several things is meant by it, the rule is inflexible that no evidence can be admitted to supply the deficiency." [See, also, Haughton v. Sartor, 71 Miss. 357.]

It results from these views that the cause should be reversed and remanded with directions to the court, *nisi,* to enter judgment in favor of defendants. It is, accordingly, so ordered.

All concur.