## ARCH LOVE v. WILLIAM LOVE, Appellant.

Division One, May 31, 1913.

1. **EJECTMENT: Evidence: No Title in Defendant: Naked Possession.** The evidence in this action in ejectment is *held* to show no title in the defendant; therefore, to defend successfully against the plaintiff, he must depend, in this case, upon his naked possession.

2. ————: **No Title: Prior Possession.** Prior possession is sufficient to maintain ejectment against one in possession without title.

Appeal from Louisiana Court of Common Pleas.—
*Hon. D. H. Eby,* Judge.

AFFIRMED.

*Pearson & Pearson* for appellant.

*Robert A. May* for respondent.

BROWN, C.—Ejectment instituted September 10, 1909, to recover a tract of land in Pike county described in the petition as follows: "Beginning at the northeast corner of the west one-half of the southwest quarter of section 30, township 55 north, range 2 west; thence east 10 chains; thence north 14.55 chains to a stake on the south bank of Salt River; thence with the meandering of Salt River in a northwesterly direction to the northeast corner of Wm. Love's 32-acre tract (being the point where the line running north and south dividing equally the west half of said section 30, intersects the south bank of Salt River); thence south 25.25 chains to place of beginning, containing 19.90 acres."

A plat of the section in which the land is situated was introduced in evidence. We reproduce it here as it will assist materially an understanding of the description as well as much of the evidence relating to it.

The ouster was laid as of May 30, 1907. The answer is a general denial.

At the trial the plaintiff introduced an administrator's deed dated August 25, 1871, executed by Masten H. Arthur, administrator of Joseph Love, deceased, to James Love, in which the land conveyed is described as follows: "Twenty acres, it being and lying in the northeast corner of eighty and 14-100 acres the fractional part of the northwest quarter of section thirty on the south side of Salt River in township fifty-five, range two west and being the same land on which

the deceased lived at the time of his death and lying in Pike county, Missouri.''

This deed was in ordinary form for the conveyance of lands sold for the payment of the debts of a decedent. Its admission in evidence was objected to on the sole ground that the description which it contains is so indefinite that it passed no title, and that it does not refer to the property described in the petition. These objections having been overruled the defendant duly excepted. The plaintiff next introduced a general warranty deed from James Love to himself dated September 14, 1905, in which the land conveyed is described as follows:

''Twenty acres, it being and lying in the northeast corner of eighty and 14-100 acres, the fractional part of the northwest quarter of section thirty (30) on the south side of Salt River in township 55, range 2 west. Also the east half of the southwest fractional quarter of section thirty (30) township 55, range 2 west containing seventy-five and 41-100 acres.

''Also the northeast quarter of the northwest quarter of section thirty-one (31), same township and range above mentioned containing thirty-eight acres more or less.

''Also the southeast quarter of section number thirty (30) in the same township and range containing thirty-three and 58-100 acres, more or less.''

The defendant objected to the introduction of this deed on the ground that the description, so far as it relates to the property in controversy, is too vague, indefinite and uncertain and is not the same land described in the petition, and saved his exception to the ruling by which it was admitted. It reserved a life estate to the grantor. Plaintiff next introduced a general warranty deed dated September 14, 1905, from James Love to William Love which also reserved a life estate in the grantor. The land conveyed was described in this deed as follows:

"All the west half of the southwest quarter of section thirty (30) township fifty-five, range two west. Also the fractional part of the northwest quarter of section thirty (30), township fifty-five, range two west, on south side of Salt River, except twenty acres being and lying in the northeast corner of eighty and 14-100 acres, the fractional part of said northwest quarter of section thirty (30) on the south side of Salt River, township and range aforesaid, which twenty acres was conveyed to grantor herein by Masten H. Arthur, administrator of the estate of Joseph Love, by deed dated August 25, 1871, recorded in book 40 at pages 590, 591 and 592 of the deed records of Pike county, Missouri."

James Love was the father of both plaintiff and defendant. These deeds were made in the distribution of his estate to his children.

A comparison of them with the plat and other evidence explanatory of it, indicates that the portion of the northwest quarter of section thirty lying south of Salt River has, since the execution of the administrator's deed in 1871, dwindled from 80.14 acres to about 61 acres. This is explained by erosion of the river bank, which is counterbalanced to some extent by accretion to the eastern portion of the fraction. The area of this fraction which lies in the west half of the quarter section has decreased from about 60 acres to 32.08 acres.

The evidence tends to show that for many years that part of the west tier of forties of section thirty lying south of the river was generally known as the Eastin Early tract, that the east half of the southwest quarter of the section was generally known as the Bradley tract, that that portion of the southeast quarter of the northwest quarter of the section lying south of Salt River was generally known as the Joe Love tract, and that Joseph Love resided on it at the time of his death. It also tends to show that at some time

after the execution of the deeds from James Love to his sons, he went with them and Mr. Beauchamp, a surveyor, to the ground and ran and marked the line running along the east side of the Eastin Early tract north to the river, and that it was accepted, for the time being at least, as the line dividing the lands conveyed by the deeds to plaintiff and defendant respectively. The father died March 26, 1906. It is admitted by defendant in his testimony that after some discussion the two sons proceeded to take possession of the land up to this line. The plaintiff rented the corn land, which consisted of about ten or twelve acres of the south end of the tract in controversy, to one Penrod, who put a crop of corn on it, and the defendant put in a crop of corn on the land lying immediately west of it. In October, after the crops had matured, the defendant proceeded to gather one-third of the Penrod corn, which was the amount of the rent reserved by the plaintiff. For this a recovery was afterwards had against him in an action for trespass. He also extended a fence along the south and east sides of the land in controversy, consisting of posts and two wires, thus fencing it in with his own land.

At the close of the evidence the defendant asked the court to instruct the jury that the verdict must be for the defendant, and also asked an instruction that there was no legal proof of the establishment of an agreed boundary line between the lands of plaintiff and defendant, both of which instructions were refused, and defendant excepted. The court then, in instructions given at the request of the plaintiff, submitted the case to the jury upon the folowing issues: (1) To find whether or not any portion of the land described in the petition was in the possession of the defendant at the beginning of the suit and if so whether the land so in defendant's possession was the same land described in the deed to plaintiff. If they found this issue in the affirmative their verdict should be for

the plaintiff. (2) Whether being in ignorance of the true location of the boundary line between their respective lands described in the deeds from their father, or such line being uncertain, they had agreed on a permanent boundary line and immediately took possession according to such agreement. If so the jury were instructed that such agreement is binding on them, and that they could not dispute it. The defendant properly saved his exceptions to these instructions.

The jury found for the plaintiff for the possession of the land described in the petition with eighty dollars as damages for its detention. From the final judgment entered upon this verdict, the defendant, after filing in due time his motion for a new trial, which was overruled, has appealed to this court .

I. While the parties, in the trial of this case, have not been prodigal in presenting to the court those underlying facts which are of great assistance in the determination of such controversies, it does appear, from the paper evidence alone, that its real motive lies in those typical phenomena which attend the uncontrolled passage of streams through the alluvial soil which forms their valleys. That portion of the west tier of forties in section thirty which lay south of Salt River, and was known as the Eastin Early tract, had, at one time, contained one hundred and forty acres of land, full measure, pressed down and running over a little, but at the time the deeds under which these parties claim and the contemporary plats were made, this area had dwindled to about one hundred and twelve acres. It is natural that, upon learning this, the defendant should have taken a lively interest in finding some way in which he could make himself whole.

**Ejectment: Recovery on Naked Possession.**

The only title under which his father had claimed the land in dispute, or any land whatever in the southeast quarter of the northwest quarter of section thirty, was, so far as is shown by the evidence, under the deed from the administrator of Joseph Love. This described the land not only as twenty acres in that part of the northwest quarter of section thirty, township fifty-five, range two, lying on the south side of Salt River, but as being the same land on which Joseph Love lived at the time of his death. Whatever may be said of the first part of this description standing alone, the land upon which Joseph Love lived is fully identified in this evidence, and includes everything that William Love is shown to have owned in the particular forty where this controversy lies. The administrator's deed was sufficient, so far as the description goes, to vest in him all that portion south of Salt River, of the southeast quarter of the northwest quarter of section thirty. In the deed which he made to the defendant on September 14, 1905, he excepted the same twenty acres which was conveyed in the administrator's deed, in the broadest terms that he could use for that purpose, a reference to the deed itself. It is unnecessary for us to express any opinion as to whether or not this exception would include accretion to the land included in the same description in the administrator's deed, for that subject is not before us. We have carefully examined the evidence, and there is nothing in it which tends to show that any part of the tract in controversy is the product of accretion since the execution of the last mentioned deed. It follows that the defendant has shown no title to the land, but that his rights rest upon his naked possession.

II.    The defendant, having shown no title to the land in controversy, admitted in his testimony that at the time of his entry upon it the plaintiff was, by his tenant, in actual possession of half of it or more, culti-

vating it in corn and claiming title to the whole under his deed; the remainder being timber land, and open to and adjoining his own. Under these circumstances the defendant ran a fence around the entire disputed tract, so as to fence it in with his own enclosure, without plaintiff's permission and against his protest, and has retained such possession. Although the question of prior possession was not submitted to the jury by instructions asked or given, the respondent is insisting on it here, and if, upon the admitted facts, he was entitled to judgment, the appellate court should sustain it on whatever theory it may have been obtained.

So long ago as 1847 this court, in approving the doctrine that the prior possession of the plaintiff was sufficient upon which to maintain ejectment against one in possession without title, stated the reasons upon which it is founded as follows: "As the action of ejectment is a possessory action, where no title appears on either side, a prior possession, though short of twenty years, will prevail over a subsequent possession which has not ripened into a title, provided the prior possession be under a claim of right and not voluntarily abandoned. The reasons upon which this doctrine is based, are very clearly stated by Judge KENT in Smith v. Lorillard, 10 Johns. 355: 'That the first possession should in such cases be the better evidence of right, seems to be the just and necessary inference of law. The ejectment is a possessory action, and possession is always presumption of right, and it stands good until other and stronger evidence destroys that presumption. This presumption of right every possessor of land has in the first instance, and after a continued possession of twenty years, under pretense or claim of right, the actual possession ripens into a right of possession which will toll an entry. But until the possession of the tenant has become so matured, it would seem to follow that if the plaintiff shows a

prior possession, and upon which the defendant entered without its having been formally abandoned as derelict, the presumption which arose from the tenant's possession is transferred to the prior possession of the plaintiff, and the tenant, to recall that presumption, must show a still prior possession; and so the presumption may be removed from one side to the other, *toties quoties,* until one party or the other has shown a possession which cannot be overreached, or puts an end to the doctrine of presumptions founded on mere possession, by showing a regular legal title or a right of possession.' '' [Crockett v. Morrison, 11 Mo. 3, 7.] We have steadily adhered to it ever since. [Bledsoe v. Simms, 53 Mo. 305, 308; Hunt v. Railroad, 75 Mo. 252; Bains v. Bullock, 129 Mo. 117; Hall v. Gallemore, 138 Mo. 638; Kelpe v. Kuppertz, 235 Mo. 479.] In Bledsoe v. Simms, supra, we added the following: ''In such case it must appear that the defendant is a mere trespasser, and that he or those under whom he claims, or from whom he obtained possession, entered upon the actual or constructive possession of the plaintiff.'' With this feature it covers like a garment every feature of the admitted facts of this case.

As what we have said will lead to an affirmance of the judgment of the trial court, it is unnecessary to discuss the questions raised as to the sufficiency of the description in the plaintiff's deed from his father. The record discloses that James Love left other heirs, and as the parties to this suit will not be concluded by this judgment with respect to their title, it is perhaps better to leave those questions in which they may be interested until they shall require a decision. The judgment is affirmed. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur, *Woodson, P. J.,* in separate opinion.

## CONCURRING OPINION.

WOODSON, P. J.—I concur in this opinion *in toto,* except as to the words on page 497, near bottom, "It is natural that, upon learning this, the defendant should have taken a lively interest in finding some way in which he could make himself whole."

I do not think it is natural for a man to look or seek to make himself whole, where the acts of nature have damaged him, as against his neighbor, and especially such conduct is anything but natural.

Also to the words, "The record discloses that James Love left other heirs, and as the parties to this suit will not be concluded by this judgment with respect to their title, it is perhaps better to leave those questions in which they may be interested until they shall require a decision." This is but little short of suggesting litigation among said "other heirs." The policy of the law is to settle and not to stir up litigation.