Lizzie A. Stonum, Appellant, v. Sam Davis.—152 S. W. (2d) 1067.

Division Two, April 3, 1941.

Rehearing Denied, June 10, 1941.

Motion to Transfer to Banc Overruled, July 25, 1941.

268

*McKay & McKay* for appellant.

*W. L. Proffer* and *James A. Bradley* for respondent.

272

BOHLING, C.—Lizzie O. Stonum, as holder of the record title, instituted this action on August 12, 1938, in ejectment and to quiet title against Sam Davis, who interposed the defense of title by adverse possession since July 22, 1926 (Sec. 1002, R. S. 1939, Mo. Stat. Ann., p. 1121, the ten-year Statute of Limitations with respect to lands). Plaintiff appealed from a judgment for defendant.

The case was submitted on stipulated facts. The lands involved are part of the swamp and overflowed lands passing from the United States to the State of Missouri and from the State of Missouri to Dunklin County. The lands remained mostly covered by water until the construction of the St. Francis river levee in 1915. On January 24, 1916, Dunklin County issued its patent covering said lands to Virgil McKay, who conveyed the same to H. O. Stonum July 30, 1917. On July 22, 1926, Sam Davis went into possession of the lands and has held the same in adverse possession to the present time against all persons whomsoever except the United States government. In November, 1926, said lands were sold under a drainage tax judgment to E. A. Reishaus and 'Armor A. George, who conveyed the same to plaintiff on November 25, 1926. The lands remained unsurveyed and unplatted until April 7, 1930, "at which time said lands were surveyed and platted by the United States government engineers" and a certified copy of the plat filed with the county clerk. On September 20, 1930, Mr. Davis made application to the United States government to homestead said lands and on March 25, 1933, said application was rejected by the United States, acting through the Department of Interior, on the ground said lands had been granted to the State of Missouri and were not subject to homestead. The

United States issued its patent to the State of Missouri on December 28, 1933, and the State of Missouri issued its patent to Dunklin County on January 24, 1934, covering said lands.

Plaintiff asserts, sufficiently stated for the issues briefed, that the Statute of Limitations does not run against the government, Federal or State (Hamilton v. Badgett, 293 Mo. 324, 329 (IV), 240 S. W. 214, 216 [5] and, as to one who holds an inchoate or equitable title as did plaintiff (General American Life Ins. Co. v. Dunklin County, 339 Mo. 289, 96 S. W. (2d) 380, 384 [3]), adverse possession first begins to run when the fee simple title passes out of the government, that is, upon the perfecting of the fee simple title in such person by patent from the government. Otherwise expressed, may defendant, in calculating his adverse possession, include the time elapsing between July 26, 1926, the date he went into possession, and the issuance of the patents of the United States (December 28, 1933) and of the State of Missouri (January 24, 1934)? The parties present no issue respecting the effect, if any, of the listing and platting of said lands as of April 7, 1930.

Congress, by an act of September 28, 1850, provided, in so far as here involved, that "the whole of the swamp and overflowed lands, . . . remaining unsold on and after the 28th day of September, A. D. 1850, are granted and belong to the several States respectively, in which said lands are situated" (Sec. 2479, R. S. U. S., 43 U. S. C. A., sec. 982) ; and made it the duty of the Secretary of the Interior "to make accurate lists and plats of all such lands, and transmit the same to the governors of the several States in which such lands may lie, and at the request of the governor of any State in which said swamp and overflowed lands may be, to cause patents to be issued to the said State therefor, conveying to said State the fee simple of said land" (Sec. 2480, R. S. U. S., 43 U. S. C. A., sec. 983.) The provisions of said act appearing at 9 Stat. at L., p. 519, with respect to the grant, read: "shall be, and the same are hereby, granted;" and, with respect to the patent, read: "and, at the request of said governor, cause a patent to be issued to the State therefor; and on that patent, the fee simple to said lands shall vest in the said State."

The United States Supreme Court has said: "Under the Swamp Land Act the legal title passes only on delivery of the patent. So the statute in terms declares. The second section provides that the Secretary of the Interior, 'at the request of said Governor' [the Governor of the state], 'cause a patent to be issued to the State therefor; and on that patent, the fee simple to said lands shall vest in the said State.' " [Brown v. Hitchcock, 173 U. S. 473, 476, 19 Sup. Ct. 485, 43 L. Ed. 772.] "While, therefore, as held in many cases, the act of 1850 was *in praesenti*, and gave an inchoate title, the lands needed to be identified as lands that passed under the act; which being done, and not before, the title became perfect as of the

date of the granting act." [Rogers Locomotive Works v. American Emigrant Co., 164 U. S. 559, 570 (also p. 574), 17 Sup. Ct. 188, 41 L. Ed. 522. See also Michigan Land & Lumber Co. v. Rust, 168 U. S. 589, 592, 18 Sup. Ct. 208, 42 L. Ed. 591; United States v. Chicago, M. & St. P. Ry. Co., 218 U. S. 233, 242, 31 Sup. Ct. 7, 54 L. Ed. 1015; Chapman & Dewey Lumber Co. v. St. Francis Levee District, 232 U. S. 186, 198, 34 Sup. Ct. 297, 58 L. Ed. 564; McCormick v. Hayes, 159 U. S. 332, 16 Sup. Ct. 37, 40 L. Ed. 171.]

However, these cases do not overrule but they recognize in so far as they treat of the issue, rulings made upon full discussion and consideration, that the act of September 28, 1850, operated as a grant *in praesenti* to the states of a full and beneficial title to the swamp and overflowed lands within their respective boundaries, lacking only an identification and a patent to perfect the fee simple title of the state, as of the date of the act; that the title of the state did not rest in promise and did not depend but became perfect upon the actual issuance of a patent by the United States; and that the Secretary of the Interior was without authority arbitrarily to affect the title passing under said act. [French v. Fyan, 93 U. S. 169, 170, 23 L. Ed. 812; Wright v. Roseberry, 121 U. S. 488, 496, 500, 509, 7 Sup. Ct. 985, 30 L. Ed. 1039; Tubbs v. Wilhoit, 138 U. S. 134, 136, 11 Sup. Ct. 279, 34 L. Ed. 887.] (Consult quotations from the cases in the recent case of General American Life Ins. Co. v. Dunklin County, 339 Mo. 289, 96 S. W. (2d) 380, 382.) [See United States v. Minnesota (March 1, 1926), 270 U. S. 181, 202, 46 Sup. Ct. 298, 70 L. Ed. 539.] If the words "are granted and belong" in Sec. 2479 of said act of 1850 constitute a grant *in praesenti*, the act is worthier evidence of the title than a patent thereafter issued by the Secretary of the Interior as the act is the direct grant by the government of land by quality instead of governmental subdivisions to specified grantees, whereas the patent, required to be issued only upon request in Sec. 2480, is the act of one of the government's ministerial officers. [Consult Grignon v. Astor, 43 U. S. (2 How.) 319, 344, 11 L. Ed. 283; Whitney v. Morrow, 112 U. S. 693, 695, 28 L. Ed. 875, 5 Sup. Ct. 333.] Apparently the United States is a donor with certain duties—duties imposed upon its Secretary of the Interior—to make. lists and plats of the lands and to transmit the same to the governor of the interested state, and a duty, upon request of the governor but not otherwise explicitly imposed or required, to issue patents conveying the fee simple title. [See United States v. O'Donnell, 303 U. S. 501, 515, 58 Sup. Ct. 708, 82 L. Ed. 980.] Difficulty of or delay in identifying the swamp and overflowed lands should not affect the grant. Under the acts of Congress a patent may function in more than one way. Congressional legislation usually contemplates the retention of title until the issuance of a patent and in such instances, the United States having title, the patent passes a

perfect and consummate title. In some instances legislation constitutes a grant *in praesenti*, divesting the United States of all title, and a patent thereafter issued operates as a deed of further assurance, a muniment of title identifying the lands and declaratory of the title passing as of the date of the grant. [Wright v. Roseberry, supra; Deseret Salt Company v. Tarpey, 142 U. S. 241, 251, 12 Sup. Ct. 158, 162, 35 L. Ed. 999, 1002-3.] Section 2480 does not expressly or by necessary implication take away or cut down the grant contained in Sec. 2479; but in providing that the patent convey the fee simple or that the fee simple vest on the patent confirms the quality of the title passing under the provisions of the grant in Sec. 2479 to be evidenced by the patent.

Gibson v. Chouteau, 80 U. S. (13 Wall.) 92, 20 L. Ed. 536 (overruling 39 Mo. 534), stressed by plaintiff, involved a "New Madrid location" under the act of Congress of February 17, 1815 (see 3 Stat. at L. 211). Section 3 of that act required the recorder of land titles for Missouri, in specified instances, to issue a certificate, "which certificate being transmitted to the commissioner of the general land office, shall entitle the party to a patent, to be issued in like manner as is provided by law for other public lands of the United States." The United States Supreme Court said (80 U. S. 102): "The patent is the instrument which, under the laws of Congress, passes the title of the United States;" and overruled the holding of the Missouri Supreme Court to the effect that a patent, issued in 1862, related back to a location made in 1841 (39 Mo. 588 and 594), and that the land was subject to being held in adverse possession subsequent to the location of 1841. The United States Supreme Court reasoned (80 U. S. 101) that the doctrine of relation is a fiction of law adopted for the purposes of justice and is applied only for the protection of those standing in some privity with the party acquiring the equitable right to title.

The instant case is distinguishable from the Gibson and like (2 C. J., p. 216, n. 56, p. 218, n. 72, 2 C. J. S., Adverse Possession, sec. 13, n. 76) cases in that the act of September 28, 1850, was not a grant in promise but a grant *in praesenti*; in that said act passed the title of the United States; and in that the patent therein required to be issued, upon request, relates back to the date of the act in confirmation of the title passed by the granting clause of the act and not solely for the protection of those in privity with the holder of the inchoate title. [St. Louis, I. M. & S. Ry. Co. v. McGee, 75 Mo. 522, 525(2); Langlois v. Crawford, 59 Mo. 456, 472.]

Missouri statutory enactments passed the interest of the State of Missouri in and to the swamp and overflowed lands of Missouri to the counties in which said lands were respectively situated. [Consult Laws 1851, p. 238; Laws 1853, p. 108; Laws 1855, pp. 154, 160; Laws 1857, p. 32; Laws 1868, p. 68; Laws 1869, p. 66.] In

so far as material to the issues presented our laws provided that "all of said lands in this State are hereby donated to the counties in which they may be respectively situated, and shall be the absolute property of such counties . . ." [Sec. 12752, of Art. 5, Ch. 81 (relating to swamp and overflowed lands), R. S. 1939, Mo. Stat. Ann., p. 4873. Consult also Secs. 12753-12755, 12780-12782, R. S. 1939.]

We have held that the statutory enactments passed the inchoate title of the state to the respective counties; that the patents issued by said counties passed the inchoate title of the county, and that the subsequent perfecting of the fee simple title in said grantors perfected the title in their respective grantees as of the date of the original divestiture of their respective inchoate titles. [General American Life Ins. Co. v. Dunklin County, 339 Mo. 289, 96 S. W. (2d) 380, 383 [2, 3], citing Missouri cases. See Varney River Drainage Dist. v. Spiedel, 347 Mo. 1124, 152 S. W. (2d) 54.] These holdings do not result in sustaining legislative interference with the primary disposal of the soil of the United States (Sec. 4, Act of Admission, ▆▆▆ R. S. 1939, p. 55ċ) if the act of 1850 was a present grant of the title of the United States.

We have no issue respecting the character of the lands or the validity of the grant or the patents. Under the instant record it now stands determined that the United States after 1850, and the State of Missouri after the aforesaid statutory enactments had no interest in said lands; and consequently in 1926, when defendant entered into adverse possession of the lands, neither the United States nor the State of Missouri had any interest therein that was affected by defendant's possession.

▆▆ Plaintiff also contends that she, and her predecessors in title, did not have a sufficient title to sustain an action for the possession of the lands until January 14, 1934, the date of the patent issued by the State of Missouri, and that the Statute of Limitations did not commence to run against plaintiff's or her predecessors' title until said cause of action accrued on January 14, 1934. Plaintiff here stresses Sec. 1529, R. S. 1939, Mo. Stat. Ann., p. 1582, and cases like Akins v. Adams, 256 Mo. 2, 13(II, a), 164 S. W. 603, 606[7]; Martin v. Kitchen, 195 Mo. 477, 487(1), 95 S. W. 780, 782(1). Akins v. Adams states that in the strict legal action of ejectment plaintiff "must recover on a legal and not a mere equitable title. So, he stands to be cast if there is shown to be outstanding a subsisting legal title. So, he must either recover on his paper title or on title by limitation." In the instant case defendant had only the naked possession. Section 1530, R. S. 1939, Mo. Stat. Ann., p. 1586, authorizes an action for the possession of lands against any person not having a better title thereto in specified instances. [Consult Callahan v. Davis, 90 Mo. 78, 82(1), 2 S. W. 216.] Plaintiff, by reason of possession of the lands by her

predecessors in title under a claim of the fee prior to defendant's possession, he being a mere intruder having only naked possession, could have maintained an action for possession. [Dale v. Faivre, 43 Mo. 556; Hall v. Gallemore, 138 Mo. 638, 642(2), 40 S. W. 891, 892(2); Crockett v. Morrison, 11 Mo. 3, 6; Love v. Love, 250 Mo. 491, 498(II), 157 S. W. 590, 592[2].] The patent from Dunklin County is an evidence of equal, if not greater, dignity of the fee than the evidences of title mentioned in Sec. 1530. Varney River Drainage District v. Spiedel, 347 Mo. 1124, 152 S. W. (2d) 54, holds that a county patent vested a grantee of swamp lands in identical condition of title with a sufficient interest to subject the same to drainage taxes for the years 1927 to 1934. Logically, then, the drainage tax judgment deeds of November, 1926, in the instant record would have supported an action by plaintiff for possession against defendant. Plaintiff succeeded to the possession and title of the grantors in her chain of title as against defendant. The construction placed on the act of 1850 identifies the lands therein granted by quality as the whole of the swamp and overflowed lands existing, in so far as here involved, on September 28, 1850, the date of the act, and the existence of the lands in dispute as falling within the purview of said act was not conditioned upon future events. 3 Tiffany on Real Property (3 Ed.), p. 641, n. 37, states: ''When there has been a grant taking effect *in praesenti*, the grantee may, even without the aid of any statute, bring ejectment, as having the legal title, though a patent has not been issued to him,'' citing among others, Deseret Salt Co. v. Tarpey, 142 U. S. 241, 12 Sup. Ct. 158, 35 L. Ed. 999; consult Carson v. Berthold & Jennings Lumber Co., 270 Mo. 238, 242(II), 192 S. W. 1018, 1019(II), and, generally, Clarkson v. Buchanan, 53 Mo. 563, 569; Campbell v. Wortman, 58 Mo. 258; Langlois v. Crawford, 59 Mo. 456, 469 et seq.; St. Louis University v. McCune, 28 Mo. 481, 485; Aubuchon v. Ames, 27 Mo. 89, 93; Wilson v. Beckwith (Banc), 140 Mo. 359, 385, 41 S. W. 985, 992; Sage v. Rudnick, 91 Minn. 325, 100 N. W. 106.

Plaintiff also takes the position that since defendant made application to the United States to homestead the lands, his possession was not adverse to plaintiff prior to March 25, 1933, the date of which said application was rejected. Hunnewell v. Burchett (Div. II), 152 Mo. 611, 615, 54 S. W. 487, supports plaintiff's position. [See also Heckescher v. Cooper (Div. II), 203 Mo. 278, 295, 101 S. W. 658, 662.] On the other hand, court en banc in Clemens v. Runckel, 34 Mo. 41, 44, held that one who enters upon land with the expectation of procuring a preemption under the acts of Congress holds possession with a claim of right to acquire absolute title, and while the possession is not hostile to the United States it is adverse to all other persons. [See, also, Mather v. Walsh, 107 Mo. 121, 131(III), 17 S. W. 755, 757(3).] The rule announced by

court en banc accords with logic and the weight of authority (consult Annotation, 31 L. R. A. (N. S.) 153; 2 C. J. S. 576, n. 98; 2 C. J. 120, n. 27, p. 130, n. 98; 1 Am. Jur. 849, nn. 6, 7, p. 871, n. 13). The Hunnewell and Heckescher cases inadvertently overlooked Clemens v. Runckel.

The judgment, being for the right party on the record made and the issues presented, is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.