## JOHN R. AKINS v. ALVIN ADAMS, Appellant.

### Division One, March 3, 1914.

1. **EVIDENCE: Records of Deeds: Accounting for Original.** A showing that the party offering the record of deeds had never had the original deeds in his hands, that he had bought his land without the originals having been turned over to him, relying on their record for the evidence of his chain of title, that he knew nothing about the whereabouts of the originals and that such inquiries as he had been able to make of those parties who would likely have any of the originals had been futile, is a sufficient compliance with the statute requiring any party wishing to use the record to show to the court by affidavit or oath that "such instrument is lost or not within the power of the party wishing to use the same," and authorizes the admission of the record in evidence.

2. ————: **Deed: Faulty Description: Corrected by Decree.** An objection that a deed which describes the land as "the south-west quarter of south-west quarter of section No. thirty-two (32) and east half and south-west quarter of south-east quarter 31, 35, 24, containing 160 acres," etc., is so defective in description as to be inadmissible in evidence, becomes purely academic, worth nothing for real justice, where there is introduced in evidence an unassailed and unassailable decree of the circuit court quieting the title against the grantors therein, which decree, with apt words of description vested the title in the party offering both the deed and decree.

Akins v. Adams.

3. ———: **Negative Fact.** It was not error to exclude in the ejectment suit, as tending to prove that plaintiff's grantor only claimed up to the division fence, testimony of a witness that he heard no claim whatever on the part of the then owner—a negative fact, which, there being no question of estoppel or unfavorable inference growing out of silence, cut no figure in the case.

4. ———: **Claim of Ownership: Statements by Parties in Possession.** Acts of owners of the land and statements of owners in possession are admissible as indicating the extent of their claim; but mere absence of all statement, or what the witness has heard others say, is not evidence of any probative force.

5. **TITLE: Imperfections: No Common Source: Estoppel, Etc.** Where no common source of title is admitted, assumed or proven to exist, the rule of convenience or of estoppel which takes no note of defects in the common stem of title anterior to the common source, cannot be invoked.

6. ———: **Ejectment: No Common Source: What Plaintiff Must Show.** Where there is no common source of title, the plaintiff in ejectment must recover on the strength of his own (not on the weakness of his adversary's) title; and he must recover on a legal (and not a mere equitable) title; and those things imply that he must recover on his paper title or on title by limitations. He must be cast if there is shown to be outstanding a subsisting legal title. If he has never been in possession of the strip of land sued for, he must rely on his paper title alone.

7. ———: ———: **Outstanding Title: Idem Sonans: Patentee Yroth: Decree Against Troth.** Where plaintiff in ejectment must rely upon his paper title alone, and the basis of his title is a patent from the United States, dated in 1845, to Isaac Yroth, who never conveyed the land, a decree in a suit in equity on service by publication brought against Isaac Troth, if living, and the unknown wife and unknown heirs of Isaac Troth, if deceased, vesting the title of said Isaac Troth in plaintiff, is not sufficient to show that the outstanding title of Yroth was vested in plaintiff. Yroth and Troth are not *idem sonans*; and the evidence showing that plaintiff's chain of title breaks with the outstanding title standing in Yroth, a judgment for plaintiff cannot stand. But the name "Yroth" is so singularly archaic that the copyist of the patent or its record may have mistaken the *Y* for a *T*, and the case is remanded for a new trial.

Appeal from Polk Circuit Court.—*Hon. C. H. Skinker*, Judge.

REVERSED AND REMANDED.

*Rechow & Pufahl* for appellant.

(1)  The court committed error in admitting a number of the deed records offered in evidence by the plaintiff without the proper preliminary proof that the original deeds could not be had.   (2) The court committed error in admitting in evidence record of deed of Granville L. Noland, deceased, by administrator, to Harriet E. Noland.   O'Day v. McDaniel, 181 Mo. 534.   "East half and south west qr. of south east qr. 31, T. 35, R. 24," will not in an administrator's sale be read as being section 31, township 35, range 24.   (3)  The court committed error in excluding evidence offered by defendant tending to show that plaintiff grantors only claimed up to the fence line.   Such evidence is admissible; also as to the Government corners.   "Parol evidence is admissible to establish the location of monuments, and even hearsay evidence and evidence of general reputation is admissible."   Tiedeman on Real Property, sec. 832; Diggs v. Knotz, 132 Mo. 250.   (4)  The defendant's demurrer at the close of the plaintiff's evidence should have been sustained. (a)  Because the plaintiff had failed to show a complete chain of title in himself.   (b)  Because the survey had not been made in accordance with the rules and regulations of the United States Land Department.   Knight v. Elliot, 57 Mo. 317; Frazier v. Bryant, 59 Mo. 124; Vaughn v. Tate, 64 Mo. 491; Lemmon v. Hartsook, 80 Mo. 19; Jacobs v. Mosley, 91 Mo. 464; Dolphin v. Klann, 246 Mo. 488; Lester's Land Law and Regulations, 722; Manual of Surveying Instructions, 26.  For the same reasons, the instruction asked at the close of all the evidence should have been given. (5)  The original entry as shown by the patent, is to "Isaac Yroth."   The decree in evidence, by which it is evidently attempted to get this title out of the

entryman, is against "Isaac Troth." Now, Isaac Yroth and Isaac Troth are not *idem sonans.*

*W. W. Wood* and *L. Cunningham* for respondent.

(1) The preliminary proof that the original instruments could not be produced was ample to authorize the court to admit record evidence showing the title of plaintiff. A reading of the evidence will sustain this proposition. (2) The court properly admitted the record of the deed of Granville L. Noland, deceased, by his administrator, in evidence and it became a question for the court to determine the meaning of the abbreviations when considered together with all the other facts in evidence. Even if this deed was not in proper form the decree offered in evidence was sufficient to establish plaintiff's title to the land and vest in him all the interest of said Noland. (3) The court did not exclude any proper evidence offered by the defendant that the persons under whom plaintiff holds title claimed the fence to be the true line, or claimed otherwise than to the true line. (4) Defendant's demurrer was properly overruled. Plaintiff introduced in evidence original deeds, record copies of deeds, and decree of court showing a complete chain of title. There could be no doubt of plaintiff's title. The survey was made according to Government regulations and to conform to the original Government field notes and the corners established by the Government. The fact that as a practical proposition there were more than 160 acres in the southwest quarter of section 31 would not make the survey invalid, and the excess in that quarter section was properly apportioned to the different landowners. Secs. 11316, 11320, 11321, 11322, R. S. 1909; Carter v. Hornback, 139 Mo. 238; Mayor v. Burns, 114 Mo. 426; Mining Co. v. Davis, 156 Mo. 422. The corners established by the United States surveyors would control. Climer v. Wallace, 28 Mo. 556. And if a corner were not found

the field notes of the United States survey will control in ascertaining such corners. Whitehead v. Ragen, 106 Mo. 235.

LAMM, J.—Suing in ejectment on a petition in conventional form, with ouster laid as of a day in March, 1909, plaintiff had a verdict at a trial to a jury in the Polk Circuit Court for possession of the two parcels of land described in his petition, to-wit: a narrow strip off of the east side (a bit wider at one end than the other) and a strip in the shape of a wedge off the north side of the southwest quarter of the southeast quarter, section 31, township 35, range 24. We omit technical descriptions which were by metes and bounds, courses and distances. From a judgment following said verdict, defendant on due and apt steps comes here by appeal. The amount of land in question is eighty-five one-hundredths of an acre, the dispute is over party lines, and the answer is a general denial.

There is no evidence tending to show that plaintiff or his grantors, near or remote, had been in possession of the two strips of land for a great many years more than sufficient to confer title by limitation, if the element of adverse possession be present on behalf of defendant. *Contra,* there was uncontradicted evidence tending to show that defendant had been in possession for a great many more years than sufficient to confer title by limitation, provided that possession was adverse and under a claim of right. The respective farms of defendant and plaintiff were coterminous and both had been under the plow for a generation or more and in actual possession (*pedis possessio*). On the north side of said forty there was for many years a party fence, and on the east side a like fence. Both these fences apparently divided the lands of plaintiff and defendant. There was an issue, threshed out at the trial (and decided against defendant), as to

whether those party fences were on the true lines—
defendant affirming and plaintiff denying that fact and
evidence on one side going in *pro* and on the other
*con* thereon.    There was an issue, likewise threshed
out (and decided against defendant), as to whether
defendant's possession was adverse and under claim
of right—plaintiff denying and defendant affirming
that fact and the evidence was *pro* and *con* on that is-
sue.    There was no common source of title agreed to,
assumed or shown to exist.    To make his case plaintiff
put in evidence the record of an official survey and
supplemented that with oral testimony, among others,
of the two surveyors who made it, to-wit, the survey-
ors of Polk and Cedar counties (the farm being on the
county line between the two and one of the section lines
run being the county line, as we understand it).    Also to
make his case plaintiff undertook to deraign title from
the U. S. Government down to him in a claimed unbro-
ken chain of conveyances, while defendant introduced
no chain of title whatever but stood on a claimed con-
tinuous, open, notorious and adverse possession under
a claim of right for a time sufficient to confer title on
him.    He furthermore (below and here) impugns the
validity and integrity of the survey plaintiff relied on.
He furthermore (below and here) challenges plain-
tiff's record title as insufficient to support ejectment.
There are rulings challenged on evidence and on giv-
ing and refusing instructions which are also assigned
for error.

Any further facts necessary to pass on material
points will appear in due course and proper place in
the body of the opinion, in connection with the disposi-
tion of those points.    We state questions in our own
way.

I.   *Of rulings on the admission of evidence.*

(a)   In putting in his chain of title plaintiff of-
fered the record of sundry deeds passing between

plaintiff's remote grantors and grantees. It was objected below (not that the record disclosed any defect in the instruments or in their acknowledgments, but) that no sufficient ground was laid for the introduction of such record, for that the original deeds were the best evidence and they were not accounted for.

The broad objects of our registry acts being to *preserve* muniments of title against the vicissitudes of loss or slips and lapses of memory and to give notice thereof to the world, it would be expected that such beneficent purposes would be supplemented by a liberal rule regulating the use of such deed records in the courts of the land. A stringent rule in that regard could not justify itself on the inherent good sense of the thing; for the record presumably in the first instance is as good as, and a replica of, the original. Accordingly we find two very definite, liberal statutory rules directed in part to that end, thus:

One (R. S. 1909, sec. 2818) making deeds acknowledged as provided by the statute admissible without further proof of their execution, thus relieving parties from common law burdens of proof of execution. The originals are always admissible, regardless of the records (Parkinson v. Caplinger, 65 Mo. l. c. 294) and the right to use or have the originals produced may be a very valuable right, for example, in case the record is defective.

The other (*Ibid.*, Sec. 2819) permits the use in evidence of the record of a deed whenever (quoting) "it shall be shown to the court by the oath, or affidavit of the party wishing to use the same, or of anyone knowing the fact, that such instrument is lost, *or not within the power of the party wishing to use the same.*"

In the instant case it was sufficiently shown, under the oath of plaintiff, that the originals of the deeds, whose records were offered in evidence and allowed over objection, had never been in his hands. He had

bought his land without the originals having been turned over to him, relying on their record for the evidence of his chain of title. So, he knew nothing about the whereabouts of those deeds and such inquiries as he was able to make of those parties who would likely have any of the originals had been futile. We think the showing was sufficient to make the record admissible, having regard to the judicial exposition of that statute. The statute is an old one and the phrase "not within the power" was early construed agreeably to the foregoing view (Barton v. Murrain, 27 Mo. l. c. 238 et seq.):

"The words of the statute, 'not within the power,' should be construed as not within the control or possession of the party wishing to use a copy—that is, not in the possession of the party, his agent, servant or bailee, or other person under his control. Therefore, if the original is presumed to be in the hands of a third person, a copy may generally be read without the preliminary oath or affidavit of the party wishing to use it; and in all other cases, in the absence of any suspicion of unfairness, nothing more should be required than that the oath or affidavit should show that the original is not within the control of the person offering a copy."

Agreeably to the above pronouncement are Boyce's Trustees v. Mooney, 40 Mo. l. c. 105 et seq.; Patton v. Fox, 179 Mo. l. c. 533 et seq.; and Walker v. Newhouse, 14 Mo. *373.

The point is ruled against appellant.

(b) In the devolution of his title plaintiff offered the record of a deed from one Tillery, administrator of Granville L. Noland, deceased, to Harriet E. Noland, a link in his chain. As appears in the abstract of record, as corrected by an ink erasure, the land description in that deed was as follows:

"The southwest quarter of southwest quarter of section number thirty-two (32) and east half and

southwest quarter of southeast quarter 31, 35, 24, containing 160 acres, and lot 9 NW. fractional quarter, section 6, township 34, range 24, situate in said county of Polk and state of Missouri.''

In appellant's brief the description reads this way: ''East half and southwest qr. of southeast qr., 31, *T.* 35, *R.* 24.'' We shall assume the description in the abstract, as corrected by the ink erasure, is the correct one. Appellant contends that the bare numerals, ''31-35-24,'' are meaningless and cannot be judicially held to be a description of any land. Therefore, the deed conveys nothing, and, having objected to its introduction on that score, he contends it was error to admit it.

It will be observed, on one hand, as of some value, that the first forty in the description in the abstract is said to be in ''section 32;'' that all of the land is in Polk county, Missouri; that the amount of land in the first part of the description (i. e., down to the ''lot'') is said to be one hundred and sixty acres; that four forties are described, but, on the other hand, it will be observed that the word ''section'' is pretermitted before the figures ''31,'' the word ''township'' before the figures ''35,'' and the word ''range'' before the figure ''24,'' nor do any abbreviations take their places.

As to the contention now in hand, we say: Having regard for the statute which permits the use of abbreviations and numerals in land descriptions in tax proceedings, Revised Statutes 1909, section 11520 (which statute itself is founded on prevailing usages in this State in relation to the use of customary numerals and abbreviations in land descriptions), and having regard to the exposition of that statute, together with judicial pronouncements upon the usages aforesaid in such cases as Simmons v. Affolter et al., 254 Mo. 163; Hector v. Horrell, 248 Mo. 166; Miller v. Keaton, 236 Mo. 694; State ex rel. v. Vaile, 122 Mo. l. c. 48 et seq.; Burnett v. McCluey, 78 Mo. l. c. 691

(*q. v.*), it is not necessary for us to rule that there is a patent ambiguity which voids the deed as a conveyance under the doctrine of such cases as Martin v. Kitchen, 195 Mo. 477, and cases cited therein, or a fatal indefiniteness as in O'Day v. McDaniel, 181 Mo. 529. If plaintiff had no other string to his bow and was so hard put to it as to have to rely on that deed alone, he might be confronted by an impassable barrier and be cast at that point. But 'tis not so and we put the question to one side as reserved; because there was introduced in evidence a decree of the Polk Circuit Court quieting title as against the Nolands who are dead and against those of them who are heirs and are alive, which decree is not questioned here as sufficient to vest whatever title they then had out of them and into plaintiff's immediate grantor, James D. Akins, nor was its sufficiency questioned below in that regard. It may therefore stand in lieu (and, in its effect, in the place and stead) of the conveyance challenged.

In that view of the matter, the admission of the deed could not affect the merits; and the error, if any, becomes nonreversible, a mere academic speculation, worth something for doctrine for doctrine's sake, but worth nothing for real justice in the case at bar. Hence, the point is ruled against appellant.

(c) It is assigned for error that the court excluded evidence tending to show that plaintiff's grantors only claimed up to the fence line, but we see no such ruling on the part of the court. What happened two or three times was this: When one witness was on the stand, Mr. LaRue, it was sought to prove the negative fact that he heard no claim at all on the part of a then owner, "Uncle Jeff Fisher." By another witness, Mr. Hopper, who lived in the neighborhood, it was sought to show the same fact. The court excluded the testimony of both witnesses on that point. No testimony was excluded of conversations or statements of

the owners or any of them, or of any act of theirs relative to the line or to fences or to claims made by parties of ownership on either side of the fence, but it was sought to put into the case, as a fact to influence the jury, the bare, negative fact of the witness not hearing anything whatever on the subject. We cannot see that the evidence would have been of any value, under the facts of this case, if it had been allowed to go in, nor can we see that its absence cuts a figure one way or the other. There are circumstances recognized by the courts where, when one should speak and does not, but remains mute, unfavorable inferences or estoppel may spring, but this case on the facts dealt with by the witness does not call for the application of those doctrines.

Finally, a witness, Rains, was on the stand. He testified that he lived in the neighborhood fifteen years before, off and on; that the fences are now on the line they were then on; witness had worked on the fences and testified that the respective owners worked the land up to the line of the fence and he had worked for both owners. Testimony of like character as above was excluded at this point. Defendant then made the following tender of evidence: ''I offer to show that for the last fifteen years the different parties who have owned and tended the Akins tract of land never have claimed any land beyond the fence line.'' To that general offer the court said: ''Unless he heard them say they did not claim it beyond the fence line, it will be hearsay; if he heard them say they did not claim it, it will be admissible.'' The witness then answered: ''They always claimed the fence was on the line and was put there from where the corner rocks stood.'' The rulings of the court and what was done under them indicated his theory to be that acts of owners were admissible and statements of owners in possession were admissible, (*vide,* Heynbrock v. Hormann, *post,* p. 21, where the authorities on that head are re-

viewed), but the mere absence of all statement, or what the witness had heard others say, was not evidence of any probative force. We find no fault with the ruling. Indeed no exception was saved to the last one and the incident was closed.

We rule the point against appellant.

II. *Did plaintiff show a good legal title?*

(a) In leading up to the turning question on this head, some applicable observations are not amiss, thus: There was no common source of title admitted, assumed or proved to exist. Hence in dealing with imperfections in plaintiff's title, if any, we may not invoke the rule of convenience or of estoppel which takes no note of defects in the common stem of title anterior to the common source. [Feller v. Lee, 225 Mo. l. c. 328.]

So, in the strict legal action of ejectment plaintiff must recover on the strength of his own (not on the weakness of his adversary's) title. He must recover on a legal and not on a mere equitable title. So, he stands to be cast if there is shown to be outstanding a subsisting legal title. So, he must either recover on his paper title or on title by limitation. We cite the statutes and some cases sustaining one or the other of those trite propositions in ejectment (From those cases discern all; for they announce the harmonious doctrines of this bench.): Martin v. Kitchen, 195 Mo. l. c. 487; Nalle v. Thompson, 173 Mo. l. c. 614 et seq.; McAnaw v. Clark, 167 Mo. l. c. 447; Thompson v. Lyon, 33 Mo. 219; Norcum v. D'Oench, 17 Mo. l. c. 114; Kingman & Co. v. Sievers, 143 Mo. l. c. 525; R. S. 1909, secs. 2382, 2389.

In the instant case, on this record, neither plaintiff nor his grantors were ever in actual possession of the two parcels of land in dispute. To the contrary, so far as the record shows, defendant always had possession since title emanated from the Govern-

ment. It becomes apparent, then, that plaintiff cannot rely for title on adverse possession in him. He is, therefore, limited to his paper title and if that fails him his right to possession fails by the same token and his judgment for possession is left without support.

(b) It will not be necessary to set forth the deeds in plaintiff's chain of title. For the purposes of the point now in mind, it may be assumed that a perfect title was shown, barring one particular, now to be mentioned. Plaintiff introduced a patent, dated in 1845, from the United States to one Isaac *Yroth,* for the southwest quarter of the southeast quarter of section 31, township 35, range 24, and obtained an instruction based on that patent, as a muniment of title. Yroth never conveyed, so far as shown. There is some confusion in the record and at one place it would seem that the *record* of the patent was offered in evidence instead of the original; at another, the original. At a certain time plaintiff's immediate grantor, James D. Akins, brought a suit in equity on service by publication to clear up his title against sundry persons, among them, as appears from the body of the decree itself, one Isaac *Troth,* if living, and the unknown wife and unknown heirs of "Isaac Troth," if deceased. Isaac *Yroth* is not made a party nor is any one, known or unknown, by the name of Yroth. No objections, *nisi,* were offered to the decree and it is not now contended it was not effective to clear up the title in all other respects, save in the break in a conveyance from *Yroth,* the patentee. Such exceptions were saved when a demurrer was offered to the evidence by defendant at the close of plaintiff's case and overruled, and when instructions were asked and overruled, as bring here the question whether that decree, which purported to vest the title out of Isaac Troth and into James D. Akins, had the effect of vesting in plaintiff's grantor the title of the original patentee and entryman, Isaac Yroth. It is of some significance that,

although the proposition is discussed in appellant's brief, respondent, the plaintiff, treats it *sub silentio*. The question may be put in another form, namely, is "Troth" *idem sonans* with "Yroth?" We cannot well give an affirmative answer to that question. The name "Yroth" is so archaic and singular in its spelling that we cannot rid ourselves of a suspicion that the record of the patent was read into the record instead of the original and that it is imperfect for that the copyist mistook $Y$ for $T$, which might readily happen. If that be so, the truth may be ascertained on another trial by reference to the records at Washington. We must take the unchallenged record here as we find it and as importing verity. The letter $Y$, a consonant (when it isn't a vowel), has fricative (and, we might add, frisky) qualities and values in sound; for example: the sound of short or long *i*, the sound of *e* as in ever (*vide,* "zephyr"), the sound of long *e*. Take the French town, Yvetot, which a scholar tells me is pronounced ev-to, or the patron saint of lawyers, dead for six hundred years, *St. Yves,* pronounced as if spelled ev. (*Nota bene*: We mention this saint for scientific purposes to illustrate a dry point in pronunciation and the values of the letter "y," not to bring up anew or blazon forth in mother tongue the sarcastic and scandalous innuendoes slyly sleeping in the shade of the dead language of a processional chant in his honor, which a pundit once told me ran this way:

> *"Sanctus Yvo erat Breto;*
> *Advocatus, et non latro,*
> *Res mirana populo."*)

But I know of no tolerated usage permitting $Y$ to have the sound value of $T$. Hence, notice to Troth, as here, cannot be held notice to Yroth. Accordingly we rule that, upon the utmost fringe and stretch of liberality, the two names are not *idem sonans*. With that ruling plaintiff's title breaks and he cannot re-

cover on this record. This ruling disposes of the case on this appeal, but as we have concluded to remand it, there is another question which should be disposed of, if possible. Attend to that.

III. *Of plaintiff's surveys.*

Section 31 in question is an exterior section lying adjacent to and east of the range line. It is a fractional section, the lines running long and making an excess over 640 acres. Defendant owns the forty in the southeast quarter of section 31 lying east of plaintiff's forty. Defendant contends that under Federal laws and regulations the excess must be thrown into the west half of section 31, and relies on Knight v. Elliott, 57 Mo. 317, and cases following that, for the doctrine that the east line of the section should be ascertained by establishing the section corners on the southeast and northeast and then measuring westwardly forty chains, making the east half of the section 320 acres, each quarter of it 160 acres and the two tiers of forties in the east half of the section exactly forty acres each, thus throwing all the excess in the west half of the section. Defendant further contends that plaintiff's survey was not made in accordance with Federal rules as set forth in the Knight-Elliot case. Plaintiff contends that the survey was made in accordance with the State statute (Chap. 115, R. S. 1909) and was not contrary to Federal rules; that all the Government corners of the section were known and found except the southeast corner; that it was established by a correct survey; that the quarter section corner on the east line of section 31 was a Government corner and was known and found, and, as we understand, his contention is that the quarter section corner on the south line of section 31 was a known and found Government corner. Be that as it may, the ultimate contention of plaintiff is that the Government section and quarter section corners were found or established

in strict accordance with the Government field notes; that on finding or establishing those corners it was ascertained that the true Government lines bounding the southeast quarter of section 31 ran *long,* making an excess in that particular quarter section, which excess the surveyors undertook to divide in accordance with statutory rules. He relies on a line of cases cited in his brief and on our statutory rules for surveying. We will not go into the matter or decide the controversy because the plats used at the trial from which the witnesses testified, to which they referred, were not introduced in evidence. So, the testimony of witnesses anent this survey, produced here in narrative form, is so chaotic, so incoherent and unintelligible in vital particulars that the like of it in court records may be found nowhere so well reported as by Rabelais in the celebrated (and, possibly, imaginary) case of Lord K * * * v. Lord Suckfist and the wonderful judgment pronounced by Pantagruel therein, a judgment doubtless familiar to the whole Missouri bar. (*Vide,* Rabelais-Pantagruel-Urquhart's Tr., Book 2, chap. 10; or vol. 6, Ill. L. Rev., tit., Law from Lay Classics, p. 189, when some liberty is taken with plaintiff's name). It is impossible for us on this record to pass on the merits of that contention. *Impotentia excusat legem.* No one (not even a judge) is bound to do what is impossible. [Strother v. Barrow, 246 Mo. l. c. 254.]

If plaintiff be presently advised that his legal title is found to be in a shape to support a judgment for possession, and a new trial is worth while, the shadows in the record may be lifted.

Points ruled dispose of material questions. The judgment is reversed and the cause remanded. All concur.