Dale Q. WALKUP,
Plaintiff-Respondent-Appellant,

Gerald L. Fischer, Gleta Gail Fischer, and
Toni A. Powell, Cornelia C. Trotter and
Nathan P. Trotter, Plaintiffs,

v.

Lee E. EVINGER and Betty Evinger, De-
fendants-Cross-Claimants-Appellants-
Respondents,

Robert S. Parker and Judith M. Parker,
Defendants-Cross-Claimants-Respon-
dents,

William T. Helman and Pearl K. Helman,
Defendants-Cross-Claimants-Respon-
dents,

David D. Helman, Trustee, J.E. Browning,
Trustee, Defendants.

Nos. WD33450, WD33466.

Missouri Court of Appeals,
Western District.

May 17, 1983.

Lawrence R. Brown, Stinson, Mag & Fizzell, Kansas City, for plaintiff-respondent-appellant Walkup and plaintiffs Fischers, Powell, and Trotters.

Charles W. Gardner, Lee's Summit, for defendants - cross - claimants - appellants - respondents Evingers.

Carl R.J. Sniffen, Stubbs & Mann, Kansas City, for defendants-cross-claimants-respondents Parkers.

Thomas Sullivan, Downey, Sullivan & Fitzgerald, Kansas City, for defendants-cross-claimants-respondents Helman.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

DIXON, Presiding Judge.

This case involves cross appeals from a court-tried case involving title to real estate, reformation of deeds, and ejectment. The trial court entered a judgment for plaintiffs Walkup[1] on the title issue quieting title in them to the disputed tract. The court also entered a judgment ordering reformation of the deed to the defendants Evinger by their immediate predecessor in title, the defendants Parker, who had cross-claimed for that relief. The deed to Parkers by the defendants Helman was also reformed upon their cross-claim. The defendants Evinger have appealed those judgments. Plaintiff Walkup cross appeals from the trial court's denial of damages for detention of the property despite the entry of a judgment in favor of Walkup on the ejectment count.

The issues in this case turn upon principles of conveyancing. To assist in the understanding of the issues, a plat follows which is prepared from an aerial photograph upon which has been superimposed the government survey designation of the forty acres involved in the dispute.

---

1. There are several parties plaintiff, but their interests are identical to Walkup's. Plaintiffs will be referred to as "Walkup." There are also several named defendants, but their interests are identical with defendants Evinger on the claim of Walkup. References to defendants will be as "Evingers." Defendants-cross-claimants Helmans and Parkers will be referred to by name.

The forty acres involved in the dispute is the Northeast Quarter of the Northeast Quarter of Section 13, Township 48, Range 30. Also critical to the issues is the creek or stream designated as Sni-A-Bar. The aerial photograph has superimposed upon it the approximate location of the present main channel of Sni-A-Bar, designated by the wider white line. Also shown is a loop of creek bed, not now a part of the main channel of Sni-A-Bar, indicated by a narrower white line. The evidence from older maps and the physical characteristics of the land indicates that the channel enclosing tract "B" was at one time a channel of Sni-A-Bar Creek. Utilization of that channel in early conveyancing descriptions dividing the Northeast Quarter of the Northeast Quarter of Section 13, Township 48, Range 30 into several areas likewise demonstrates the existence of a channel of the creek at the location of the narrow white line.

The dispute centers on tracts "A" and "B" on the sketch. Tract "C" is conceded to be the property of Evinger. The difficulty, however, arises in connection with the descriptions in the chain of title to Tract "C". Tract "C", from 1870 until 1951, was described in all conveyances as 15 acres off the E/2 of the NE/4 of the NE/4, all of said 15 acres lying east of Sni-A-Bar Creek or as 15 acres off the *east side* of the NE/4 of the NE/4.

Cora A. Lea acquired Tract "C" by that description in 1912. In 1952 her heirs conveyed to H.C. Bessemer and Juanita E. Bessemer by a description which reads: "All that part of the Northeast Quarter of the Northeast Quarter lying east of Sni-A-Bar Creek." This description made no reference to the land as being in the East Half of the Quarter Quarter Section or as being off the east side, as all previous deeds had described the land in Tract "C".

Thereafter and at various dates, Bessemers conveyed to William T. Helman and Pearl K. Helman; Helmans conveyed to Robert S. Parker and Judith M. Parker; Parkers conveyed to Lee E. Evinger and Betty J. Evinger. Each of these deeds utilized the description in the deed to Bessem-

ers, which omitted the reference to the East Half of the Northeast Quarter of the Northeast Quarter.

Evingers claim under those deeds title to the tracts labeled "A" and "B" and thus to all of the Northeast Quarter of the Northeast Quarter, or forty acres. They make the claim based on reading the description as "all of the Northeast Quarter of the Northeast Quarter" east of the channel marked with the wide white line, which they contend is Sni-A-Bar Creek, thus including tracts "A" and "B" within the description. This reading of the description, even as it was erroneously altered in 1952, ignores the language "*all that part* of the Northeast Quarter of the Northeast Quarter of . . ." east of Sni-A-Bar Creek, which implies some part of the quarter quarter west of the creek, and not the entire quarter quarter.

On the other hand, the evidence discloses a record title in the Walkups to Tracts "A" and "B" from the United States patent to the date they acquired title. The evidence discloses that Walkup and his predecessors in title were in possession and farming the land from at least 1941 to 1979, when Evingers took forcible possession of it and began to farm the disputed tracts "A" and "B".

There is no need to encumber this opinion with a detailed statement of the evidence. There is no factual issue with respect to possession, or the land intended to be conveyed by Evingers' predecessors in title. Helman and Judith Parker testified in support of Walkup's claim and adversely to Evingers' claim. Cornelia Trotter and Gerald L. Fischer, predecessors in title to Walkup, testified to the possession and boundaries of Tracts "A" and "B" in Walkup and themselves. Evingers knew at the closing that the title they were receiving was not insurable because they received a refund of the title premium and written notice of the defects in the title.

On the title issue, the defendants Evinger assert that an abstract was improperly received in evidence, that collections of certified copies of conveyances were improperly

received in evidence, and that plaintiffs failed to meet the burden of proof necessary to quiet title in plaintiffs.

The detail of the evidence offered and the way in which it was offered must be stated to rule the first two issues raised by appellants Evinger. The evidence for the plaintiffs Walkup as to record title to the disputed tracts "A" and "B" and the land marked tract "C", conceded to be the land of Evingers, was presented with meticulous care and detail. Walkups presented as an expert witness a lawyer and title examiner for a title company who had examined the abstract of title offered in evidence. This expert witness testified from his notes made in the examination of the titles as to the chain of title to all of the tracts. The witness also identified, by reference to that chain of title, by book and page, and by grantor and grantees, all of the certified copies of conveyances offered in evidence.

The admissibility of the abstract itself need not be determined in this case. Walkup points out in his brief that in this court-tried case, even if the abstract is inadmissible, the error, if any, in its admission is not fatal. This for the simple reason that the proof in this case does not depend upon the abstracts. The deeds, which form the Walkup chain of title from the government down to the conveyance to him, were in evidence by certified copies of the records of the Recorder of Deeds for Jackson County. The certified copies were offered to show chain of title. The records of the defendants Evingers' title—from the patent down to the deed from the heirs of Cora Lea, as well as the deeds containing the different description from 1952 when the heirs of Cora Lea conveyed, to the conveyance by which the defendants Evinger claim title—were also in evidence by means of certified copies of the Recorder's records. The simple issue is whether these deeds were properly put in evidence by the plaintiffs.

Omitting transcript references and the single citation offered, the entire argument of the defendants Evinger is contained in the following three sentences:

Exhibit [*sic*] 4, 5, 6, 7 and 8 were introduced simultaneously into evidence as "various deeds." They were not even identified but were received over defendants' objections.

In fact, these are not individual deeds but essentially abstracts of title (containing, e.g. affidavits; . . .) and thus inadmissible as evidence.

It is very difficult to perceive the exact ground for the complaint of the defendants Evinger. The only objection at the time the documents were received in evidence was "no proper foundation." At that point counsel for the plaintiffs indicated they were being offered under the certificate of the recorder's office as official records. The defendants made no further objection to their admission, and the court indicated they would be received.

■ It is beyond argument that a certified copy of a deed may be read in evidence under certain conditions. Section 490.420 RSMo 1978 specifically authorizes the introduction of the certified transcript of the record of the recorder's office, subject only to the condition that the proponent of the offer show that the instrument is lost or not within the power of the party wishing to use the same. That statute has existed in our law in that form since at least 1874. In the present statutes, as it has been for many years, it is preceded by § 490.410, which defines the instruments that may be offered in evidence as those that are acknowledged and recorded in accordance with the statutes.

In the early case of *Akins v. Adams,* 256 Mo. 2, 9, 164 S.W. 603, 605 (1914), Judge Lamm, speaking for the supreme court, construed these statutes and quoted from an early case, *Barton v. Murrain,* 27 Mo. 235, 238–39 (1858), which stated the rule with respect to the proof necessary for admission of certified copies of deeds:

"The words of the statute, 'not within the power,' should be construed as not within the control or possession of the party wishing to use a copy; that is, not in the possession of the party, his agent, servant, or bailee, or other person under his

control. Therefore, if the original is *presumed* to be in the hands of a third person, a copy may generally be read without the preliminary oath or affidavit of the party wishing to use it; .... " (Emphasis added.) Judge Lamm's opinion points out that the purpose of this statute is to further the broad objects of the statutes—to preserve the muniments of title against the vicissitudes of loss or slips and lapses of memory—and that that purpose is served by liberal construction of the statutes because the record presumably is as good as, and a replica of, the original deed.

There is not a whisper in the trial record or in the brief of defendants here that any of the recorded instruments were erroneous or not properly acknowledged. Nor is there the faintest claim or even inference that any of the original deeds were ever in the possession of the plaintiff Walkup. Their own deed was shown by photostatic copy of the original deed bearing the signature of the parties, the acknowledgment of the notary, and the recording information, so that no question could conceivably be directed to the authenticity of that deed. Even after plaintiffs' counsel announced the authority for his offer of the certified copies, there was no objection consistent with the only ground for exclusion authorized by the statute, the possession of the original deeds by the plaintiff, or the failure to show their loss in some fashion. The deeds to the lands claimed by the plaintiffs constituting the portion of the chain of title from 1940 to the present time are all photostatic copies of the original documents. The use of photostatic copies is specifically authorized by §§ 109.120 and 109.130 RSMo 1978 and obviates any question with respect to a mistake in the transcription of a deed to the recorder's record. In such circumstances, it is hard to conceive what the defendants Evingers' present complaints are—each of these deeds was identified subsequently by the expert witness as a deed in the chain of title of the plaintiff Walkup, giving the book and page and other relevant information about the deed, including the description. As to the affidavits, which were also

part of the recorder's records and are affidavits of heirship that include descriptions of the land in question such documents are specifically admissible under § 490.370 RSMo 1978, subject to the general provision of that statute as to the length of time of recording, the availability of witnesses, and the payment of taxes. The only possible claim the defendants could have asserted against the admissibility of these affidavits would have been the availability of the affiant as a witness, which was not raised or mentioned in any way. Absent an objection raising some statutory basis for disqualification of these records as evidence, the statute makes them admissible.

It would be prudent for the proponent of copies of the recorder's records to show by proof that the proponent does not possess or control the instruments or fall under any other pertinent provisos of the statutes. The ancient, but still valid, authority cited supports the offer in this case upon the presumption that the original deeds were not in the possession of the proponent. Under these circumstances, where there is no real issue concerning the deeds but only the interpretation of the description, they were properly received. As to the affidavits, they were only incidentally involved in the issues of the case supporting as they do the plaintiff's chain of title, and no conceivable prejudice to defendants arises from their admission in evidence. The Evingers' citation to a case involving the admission of abstracts in evidence is inapposite.

Under the statutes and the evidence offered, the proof is the same as if the plaintiffs had produced and proven the original deeds constituting their paper title to the land in question. There was no error in the admission of the documents.

The Evingers also assert that the plaintiffs Walkup failed to meet the burden of proof necessary to quiet title to the disputed tracts in Walkup. A review of this issue is circumscribed by Rule 73.01(c) and *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). In the review of the evidence in this case, the abstract has not been considered.

It is unnecessary to iterate the evidence at length. It is sufficient to state that there was substantial evidence supporting the trial court's decree of adverse possession in Walkup and his predecessors in title. The tax receipts were in evidence showing that taxes were paid on the disputed tracts by Walkup and his predecessors in title. The land was farmed by Walkup and his predecessors in title, a fact that even Evingers conceded. Evinger concededly was familiar with the land and its use from his long residence and farming activities in the neighborhood. His actions at the time of closing and immediately after the closing indicated he was aware of the claims of Walkup and his predecessors in title. Evingers' predecessors in title, the Helmans, never claimed any right, title, or interest in the disputed areas, never farmed it, never paid taxes on it, and Mr. Helman testified he pointed out the boundaries of the land sold to Parkers as excluding the disputed tracts. Upon this evidence, which is replete in detail in the transcript itself, the trial court could properly find and did find adverse possession in Walkup. There is no basis to set aside that judgment.

This finding of adverse possession would ordinarily preclude consideration of the last issue briefed by the Evingers as to Walkup's claim to the disputed tracts. That issue is the location of Sni-A-Bar Creek. The Evingers contend that, since Sni-A-Bar Creek is a monument in description of their land and in the description of the land of plaintiff Walkup, the present location of the active channel of Sni-A-Bar Creek must be taken as the monument in both descriptions, thus giving to Evingers a claim of title to the disputed tracts by their description. That contention is dispelled by an understanding of the true nature of Sni-A-Bar Creek as a natural monument. There were several maps in evidence, and they amply demonstrate that over the years the Sni-A-Bar Creek at that location has occupied several channels. The aerial photograph reproduced in this opinion affords strong evidence of a channel of Sni-A-Bar flowing around tract "B".

The early deeds, taken in conjunction with the maps in evidence, demonstrate that the creek bed around tract "B" was at one time a flowing channel of Sni-A-Bar. The aerial photograph graphically depicts the change in the channel in which Sni-A-Bar cut through the oxbow of the creek around the tract. Such an avulsion in the course of the creek conveys no title. J. Grimes, A Treatise on the Law of Surveying and Boundaries § 567 (4th ed. 1976). The same author states the rule for determining the avulsive nature of the change as follows:

> The change in course of a stream is clearly avulsive when the land between the old and new channels remains substantially as it was. The unaltered condition of the land may be indisputably shown by the continued existence of improvements in place or of timber, undergrowth, and other vegetation. A study of historic documents, especially maps and aerial photographs, will often help in determining what process has taken place. As a general rule the abandoned channel is easily identifiable where an avulsive action has occurred.

*Id.,* at 774.

■ The evidence in this case taken as a whole shows the avulsive nature of the change in the flow of Sni-A-Bar. Missouri law recognizes that a stream may be a natural monument. *Prichard v. Hink,* 574 S.W.2d 30 (Mo.App.1978). When, as in the instant case, the course of a stream avulses leaving evidence of the location of the former stream that formed the boundary, no change in title occurs, and the deed descriptions will be read as they were intended. A contrary reading of these deeds would give the defendants Evingers title to land in an adjoining quarter section in which their predecessors in title had no claim upon record or otherwise.

■ The argument raised by the Evingers concerning reformation of the deeds of Evingers' predecessors in title rests upon misapprehension of both the law and the facts. A mistake to justify reformation must be mutual and common to both par-

ties. A purchaser is charged with notice of all deeds in his chain of title. *Luker v. Moffett,* 327 Mo. 929, 38 S.W.2d 1037 (Mo. 1931). A purchaser is required to discover facts whenever circumstances exist that in commonsense prudence would suggest an inquiry. *Walters v. Tucker,* 308 S.W.2d 673 (Mo.1957).

 Upon these principles Evingers and their grantors, the Parkers, are bound to notice that the deeds in the chain down to Helmans supported title to only 15 acres. That fact should have put them on notice to inquire concerning the validity of the description. Both parties knew of the title dispute at the time of closing. But for still another reason, the deeds should be reformed. Both Helmans and Parkers unquestionably knew only 15 acres were to be conveyed and the boundaries were pointed out. The same notice of the underlying title existed. Neither party intended the contract as written in the deed; both intended for the deed to convey 15 acres, no more. Thus, the Parkers' request for reformation is to be sustained. Evingers cannot be bona fide purchasers, and they are bound by that reformation. *Flaspohler v. Hoffman,* 652 S.W.2d 703 (Mo.App.1983). The reformation decrees were proper.

 This leaves for disposition the cross appeal of Walkup for damages. The pleadings in this case contained a count in ejectment. The trial court found for the plaintiff Walkup on that count. Damages for detention of the land is proper relief in an ejectment action. § 524.110 RSMo 1978. The plaintiff proves a prima facie case in ejectment by proof of a record chain of title, and the burden to prove adverse possession to defeat the record title shifts to the defendant if he seeks to prove title in him by adverse possession. *Eatherton v. Henderson,* 59 S.W.2d 623 (Mo.1933). The evidence is undisputed that Evinger, using a gun, ran the plaintiff Walkup off the land in question in October or November of 1979. Evingers farmed the land in 1980 and 1981. The evidence showed a net profit on comparable land of $100 an acre for the years in question, and the farm ground used by Ev-

ingers consisted of 25 acres. Evinger testified that the rental value of the land was $55 an acre. The trial court denied damages saying that plaintiff failed to show actual damages and that because a suit for quiet title was necessary to confirm Walkup's title, damages should not be awarded. In this the trial court was in error. As to the first ground, it is clear the evidence shows damage, and the trial court's judgment cannot be sustained upon that basis.

 The second ground relied upon is no better basis for the trial court's denial of damages. Ejectment can be and often is converted to an action to try title. Under the trial court's reasoning, in any case where the party with a meritless claim took forcible possession of land and a suit was required to restore possession and try the title, no damages would be allowed. That simply cannot be the law. To recognize such a rule would be to encourage meritless claims and forcible possession of lands. Evingers' brief does not even answer the cross appellant's brief on this issue, and no authority is cited in support of the trial court's denial of damages. The relief requested by the plaintiffs for damages for the wrongful detention of the ground is within the scope of relief requested by them, was supported by evidence, and should have been sustained. Walkup concedes in the argument that his claim is limited by the prayer of the petition to $2,500. The trial court judgment with respect to the denial of damages is reversed, and judgment is entered against Evingers for $2,500. The decree in all other respects is affirmed.

All concur.