**Janet D. BLACK, Appellant,**

v.

**Alan W. SIMPSON and Anita D. Simpson, Respondents.**

No. 22781.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 10, 1999.

and weigh the evidence. This we cannot do. *See Gentry,* 744 S.W.2d at 789.

Christina L. Kime, Hackworth, Kime & Bowles, L.L.C., Piedmont, for appellant.

Monte C. Phillips and Paul E. Oesterreicher, Doniphan, for respondents.

CROW, Presiding Judge.

This lawsuit between adjoining landowners began when Appellant, claiming record ownership of a strip of land occupied by Respondents, sued them in ejectment and for other relief.

Respondents counterclaimed to quiet title in themselves by adverse possession to a rectangular strip with an east/west dimension of 73.3 feet and a north/south dimension of 20 feet. That parcel is henceforth referred to as "The Disputed Strip."

The trial court, hearing the case without a jury, entered judgment which, *inter alia*, awarded Respondents ownership of part of The Disputed Strip. The part awarded Respondents is a rectangular strip with an east/west dimension of 42.3 feet and a north/south dimension of 13 feet. It is henceforth referred to as "The Awarded Strip."

The southwest corner of The Awarded Strip is the southwest corner of The Disputed Strip. That corner is also the southwest corner of the tract to which Appellant claims record ownership.

▮ The judgment declared Appellant owner of the part of The Disputed Strip lying outside The Awarded Strip.[1]

Appellant brings this appeal, maintaining the trial court erred in: (1) awarding Respondents The Awarded Strip, and (2) refusing to grant Appellant damages for waste, rents and profits from Respondents' occupancy of Appellant's land.

At trial, Appellant identified Plaintiff's Exhibit 1 as the deed by which she acquired ownership of The Disputed Strip and other land. Exhibit 1 is a general warranty deed executed August 22, 1975, by Joan Doherty. It conveys to Appellant an "undivided one-half interest" in land encompassing The Disputed Strip (and, *a fortiori*, The Awarded Strip). Exhibit 1 recites it was filed for record with the Recorder on August 26, 1975.

The record does not reveal how Appellant acquired the other half-interest in The Disputed Strip (if she indeed acquired it). However, Respondents did not claim ownership of The Disputed Strip on any theory other than adverse possession.

▮ Consequently, because (1) a party claiming ownership of land in a quiet title action must prevail on the strength of his own title and not on any weakness in his adversary's title, *Ollison v. Village of Climax Springs*, 916 S.W.2d 198, 203[7] (Mo. banc 1996), (2) Appellant is record owner of at least an undivided one-half interest in The Disputed Strip, and (3) Respondents claimed no record ownership of The Disputed Strip, the trial court could properly declare Respondents owners of The

---

1. In an action to quiet title, the court is required to adjudicate the respective interests of the parties in the disputed property, regardless of which party is entitled to it. *Pitts v. Pitts*, 388 S.W.2d 337, 339[1] (Mo.1965). Such declaration should be entered even though the party claiming ownership fails to establish his claim and the adverse party does not affirmatively request an adjudication of title in him. *Id.* at [2].

Awarded Strip only if Respondents established ownership by adverse possession.[2]

■ Appellant's first point avers Respondents failed to prove ownership of The Awarded Strip by adverse possession in that neither Respondents nor their predecessors in title had actual, open and notorious possession of The Awarded Strip for a continuous period of ten years. Appellant argues that Respondents acquired their property less than ten years before Appellant filed suit, and Respondents "failed to prove adverse possession by their predecessors in title for the requisite time period."

This court's review is governed by Rule 73.01(c), Missouri Rules of Civil Procedure (1999). In *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), the Supreme Court of Missouri construed the predecessor of Rule 73.01(c) to mean that the judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32[1].

■ In applying the above standard, an appellate court defers to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the judgment and disregarding all contrary evidence and inferences. *Mehra v. Mehra*, 819 S.W.2d 351, 353[2] (Mo. banc 1991). That is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988).

Evidence favorable to the judgment showed Respondents own a rectangular parcel of land, henceforth referred to as "Respondents' Tract." The distance from the northwest corner to the northeast corner of Respondents' Tract is 73.3 feet. That side of Respondents' Tract (its north boundary) abuts the south boundary of Appellant's land described in Exhibit 1.

A house sits on Respondents' Tract. Respondents occupy it.

At trial, Plaintiff's Exhibit 2, a plat of an April 1996 survey, was received in evidence by stipulation as "a fair and accurate portrayal of the real estate." According to Exhibit 2, the north side of Respondents' house sits on the north boundary of Respondents' Tract.[3]

The Awarded Strip lies immediately north of, and adjacent to, Respondents' house (and thus immediately north of, and adjacent to, Respondents' Tract). As reported in the third paragraph of this opinion, The Awarded Strip is 42.3 feet east/west by 13 feet north/south.

The Awarded Strip is shown on Exhibit 2 as a 13–foot–wide driveway, the east portion of which is covered by a "Car Port." The west end of the driveway appears to enter Hope Street.[4] The east end of the driveway appears to abut a small shed. As this court comprehends Exhibit 2, the southwest corner of the shed is within a few feet of the northeast corner of Respondents' house. The Awarded Strip apparently includes the area occupied by the shed, as the east end of The Awarded Strip appears to coincide with the east side of the shed.

■ To establish ownership of a parcel of land by adverse possession, a claimant

---

2. Because Respondents did not appeal, Appellant's ownership of the part of The Disputed Strip lying outside The Awarded Strip is no longer in issue. *Cf. State ex rel. Ginger v. Palmer*, 198 S.W.2d 10, 11[2] (Mo. banc 1946).

3. Appellant testified that according to Exhibit 2, "a little corner of [Respondents'] house

hangs over [on my property]." It is impossible for this court to confirm that testimony by examining Exhibit 2, as the encroachment of Respondents' house—if any—is too slight to be discernible on Exhibit 2.

4. Respondents' address is 402 Hope Street.

must prove by a preponderance of the evidence that his possession of the land was: (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years. *Flowers v. Roberts,* 979 S.W.2d 465, 469[1] (Mo.App. E.D.1998); *Conduff v. Stone,* 968 S.W.2d 200, 203[3] (Mo.App. S.D.1998).

Appellant commenced this suit August 8, 1997.

The theory of Appellant's first point is set forth in the following segment of argument in her brief:

"In this case, assuming that Respondents satisfied the first four elements of adverse possession during the time they possessed the property, that, by itself, is insufficient to entitle them to the relief they request. The record indicates that the earliest date Respondents possessed [The Awarded Strip] was November or December of 1987. Since the ejectment action was filed by Appellant on August 8, 1997, Respondents cannot be entitled to ownership by adverse possession based only upon their own actions. They fall short of the requirement of ten years of continuous possession and, as noted by the Court in *Flowers,* [979 S.W.2d at 470[9],] 'ten years means ten years.'"

Each Respondent testified as to when Respondents took possession of The Awarded Strip.

Alan[5] avowed he and Anita arranged to buy Respondents' Tract in November 1987. However, explained Alan: "[There was] a delay on doing the improvements that FmHA was doing on the house. We moved in in November, but we didn't close until May ... '88[.]"

Asked whether the house had a driveway when he looked at it in 1987, Alan replied: "[T]here was an old antiquated culvert that was half smashed and a little rough[.]" Alan's testimony continued:

"Q. When you bought the house from FmHA was it, did they give you the money to do, to concrete the driveway?

A. It was alldone [sic] before we moved in, before we bought the house. FmHA did it.... FmHA put the new culvert in.

. . . .

Q. So, when you moved in in November or December 1987 the concrete driveway was in place?

A. Yes, ma'am, it was.

Q. Okay. And you subsequently put the shed on the concrete?

A. Yes, ma'am, I did."

Alan added that he began building the "Car Port" sometime after Respondents moved in, but never completed it because of the expense.

Anita testified Respondents first looked at the house "[s]ometime in October '87." Then, this:

"Q. And was there a concrete driveway there when you looked first at the house?

A. No.

Q. Then when did you move in the house?

A. December 11th, '87.

Q. Was the concrete driveway there when you moved in?

A. Yes.

Q. And it's your understanding that FmHA had the driveway poured?

A. Yes.

Q. And when Alan constructed the shed did he construct it on top of the concrete that FmHA had poured prior to you moving in?

A. Yes."

5. For brevity and clarity, this opinion henceforth refers to each Respondent by forename. No disrespect is intended.

Respondents' testimony was the evidence most favorable to them on the issue of when they took possession of The Awarded Strip. At best, that testimony established they took possession no earlier than sometime in November 1987. Consequently, they had not been in possession ten years when Appellant filed this suit August 8, 1997.

It is thus evident Respondents could establish ownership of The Awarded Strip by adverse possession only if (1) their predecessors in ownership of Respondents' Tract occupied The Awarded Strip, (2) Respondents were allowed to "tack" their predecessors' possession onto Respondents' possession,[6] and (3) the combined possession continued uninterrupted for ten years prior to commencement of this suit.

Assuming—without deciding—that "FmHA" satisfied the first four elements of adverse possession (listed earlier) when it concreted the driveway, such possession, coupled with Respondents' possession, still would not total ten years because, at best, the paving occurred no earlier than sometime in October 1987.

There was no evidence that "FmHA" occupied The Awarded Strip before concreting it. Indeed, there was no evidence as to how long "FmHA" owned Respondents' Tract before conveying it to Respondents, and no evidence as to when the house was last occupied before Respondents took possession.

Carmen Jackson testified she had resided across the street from Appellant's property since December 24, 1984. She avowed that in 1986 her sister was seeking a residence to buy, and they looked at Appellant's property.[7] In doing so, they observed the house ultimately purchased by Respondents; it was vacant at that time.

Alan testified that before he ever met Anita, he "was by the house one time when Debbie Helms was living there." He did not recall the year. On that occasion, said Alan, an "old antiquated driveway with a culvert" was on the north side of the house. Alan saw a car in the driveway. However, Alan conceded Ms. Helms was not present on that occasion and he did not know who owned the car.

Anita testified she was also at the house on one occasion when Ms. Helms lived there. Asked when that was, Anita answered, "Between '82 and '85[.]" On that occasion, Anita saw the driveway; Ms. Helms's car was in it.

Assuming—without deciding—that the incidents recounted by Alan and Anita would support a finding that Ms. Helms was in possession of the driveway on those occasions, such evidence does not aid Respondents because there was no evidence that such possession was continuous from one incident to the other or that such possession continued uninterrupted until "FmHA" took possession of Respondents' Tract (whenever that was).

■ Adverse possession of land must be shown to have been continuous and unbroken for the whole prescribed period of limitation in order to ripen into ownership. *Allen v. Wiseman,* 359 Mo. 1026, 224 S.W.2d 1010, 1012–13[6] (1949). The moment adverse possession is broken, it ceases to be effectual, because as soon and as often as a break occurs, the law restores the constructive possession of the owner. *Heide v. Sheeks,* 682 S.W.2d 877, 879–80[5] n. 2 (Mo.App. S.D.1984).

Because the evidence favorable to Respondents is insufficient to support a finding that they and their predecessors in ownership of Respondents' Tract had unbroken possession of The Awarded Strip for a continuous period of ten years before

---

**6.** A brief discussion of "tacking" appears in *Flowers,* 979 S.W.2d at 470[11].

**7.** This court gleans from Appellant's testimony that she resided in Florida throughout the events recounted in this opinion. Evidently, Appellant rents her property to tenants.

Appellant commenced this suit, this court holds the trial court erred in awarding The Awarded Strip to Respondents.

Appellant's second point avers the trial court erred in refusing to award her damages after finding in her favor as to the part of The Disputed Strip lying outside The Awarded Strip.[8] Appellant cites § 524.110, RSMo 1994, set forth below.[9]

The only relief the trial court granted Appellant (besides declaring her owner of the part of The Disputed Strip lying outside The Awarded Strip and owner of the other land described in Exhibit 1 outside The Disputed Strip) was to command Respondents to "remove any materials they have on [Appellant's] property" within thirty days.

In *Walkup v. Evinger*, 653 S.W.2d 383 (Mo.App. W.D.1983), cited by Appellant, the plaintiffs filed a multi-count suit including a count for ejectment. *Id.* at 384. The trial court found for the plaintiffs on the ejectment count but awarded no damages. *Id.*

The appellate court in *Walkup*, citing § 524.110, RSMo 1978,[10] held damages for detention of land is proper relief in an ejectment action. *Id.* at 390[10]. Because the evidence clearly showed damages in the amount prayed for by the plaintiffs,

the appellate court reversed the trial court's denial of damages and awarded the plaintiffs damages in the amount prayed. *Id.* at 390. In the instant case, Appellant testified the "fair rental value" of the area on which Respondents encroached was $50 per month. Appellant's brief concedes the trial court was not obliged to believe her testimony, *Herbert*, 757 S.W.2d at 587[1], but she points out that a party who brings an ejectment action and prevails is entitled to nominal damages without further proof. *Smith v. McClard*, 439 S.W.2d 246, 251[7] (Mo.App.1969); *Corbin v. Galloway*, 382 S.W.2d 827, 832[9] (Mo.App.1964); *Atkinson v. Smothers*, 291 S.W.2d 645, 649[8] (Mo.App.1956).

■ In the instant case, the trial court, having held Respondents acquired ownership of The Awarded Strip by adverse possession—a ruling declared erroneous earlier in this opinion—may have found Appellant proved no actual damages from Respondents' occupancy of any of Appellant's other land. However, even if the trial court reached that conclusion, the trial court should have awarded Appellant at least nominal damages for Respondents' occupancy of Appellant's land beyond The Awarded Strip.[11] That omission, however,

---

8. Appellant's petition prayed for recovery of possession of the portion of Appellant's property occupied by Respondents, and for "removal of the encroaching improvements, together with damages for any waste and injury and the rents and profits thereof."

9. Section 524.110, RSMo 1994, which pertains to ejectment actions, reads:

"If the plaintiff prevail in the action, he shall recover damages for all waste and injury, and, by way of damages, the rents and profits, down to the time of assessing the same, or to the time of the expiration of the plaintiff's title, under the following limitations:
(1) When it shall not be shown on the trial that the defendant had knowledge of the plaintiff's claim prior to the commencement of the action, such recovery shall be only from the time of the commencement of the action;

(2) When it shall be shown on the trial that the defendant had knowledge of the plaintiff's claim prior to the commencement of the action, and that such knowledge came to the defendant within five years next preceding the commencement of the action, such recovery shall be from the time that such knowledge came to the defendant;
(3) When it shall be shown on the trial that knowledge of the plaintiff's claim came to the defendant more than five years prior to the commencement of the action, such recovery shall only be for the term of five years next preceding the commencement of the action."

10. The version of § 524.110 in RSMo 1978 is carried forward unchanged in RSMo 1994.

11. Respondents admitted they fenced a strip of Appellant's land east of, and adjacent to, The Awarded Strip and used the fenced portion as part of their back yard.

is academic, as explained in the next paragraph.

Because this court is reversing the trial court's grant of The Awarded Strip to Respondents, this court need not speculate about the damages Appellant should have received had this court upheld that award. On remand, the trial court must determine the damages Appellant is entitled to because of Respondents' occupancy of the entire area of Appellant's land on which Respondents encroached.

\* \* \*

### Disposition

The portion of the judgment declaring Respondents owners of The Awarded Strip is reversed. On remand, the trial court shall enter judgment declaring Appellant owner of all land described in Exhibit 1.

The portion of the judgment commanding Respondents to remove anything they have on Appellant's land within thirty days is affirmed. That command shall include the concrete driveway, the Car Port, the shed, the fence, and any other encroachments.

The trial court shall award Appellant such damages as the trial court finds Appellant entitled to under § 524.110, RSMo 1994, together with the costs of this action.

PARRISH and SHRUM, JJ., concur.